**DUNCANSON et al. v. HOWELL.**
(No. 147-3094.)

(Commission of Appeals of Texas, Section A.
June 9, 1920.)

**1. Associations ☞15(I)—Purchasers of shares
in colony held equitable owners of separate
tracts and of excess acreage.**

Purchasers of shares in a colony, with understanding it contained not less than 12,800 acres, each share representing 1/1232 part of the whole tract, on paying the price became collectively equitable owners of their interests in the entire tract, and also acquired equitable title to an excess area of 135.92 acres subsequently discovered in the tract, which was not reserved from sale to them or in any way designated or segregated, though deed was not made by the vendors as provided in the contract, but deeds were executed to each undivided purchaser or shareowner for specific property designated by a meeting of shareholders.

**2. Tenancy in common ☞38(I)—One cotenant may maintain action against another who
has ousted him.**

One tenant in common may maintain action to establish title and to recover possession against his cotenant, when the latter has ousted him of possession of the property owned in common.

**3. Tenancy in common ☞55(I)—Title to undivided interest warranted recovery of whole
tract as against trespasser.**

Title of a tenant in common to an undivided interest in the land involved in an action to establish title and to recover possession was sufficient to warrant recovery of the entire tract as against a trespasser, though such right does not exist as against a cotenant.

**4. Trusts ☞30½(I)—Commission appointed
by colony shareholders not trustees, but
agents.**

Committee appointed by shareholders in a colony, though denominated trustees, *held* in fact mere agents, not vested with the title of any of the shareholders.

**5. Trespass to try title ☞26—One without
title cannot maintain action for benefit of another with title.**

One without title cannot maintain an action to establish title, and to recover possession for the use or benefit of another having title.

**6. Trespass to try title ☞47(I)—Plaintiffs,
without title to defendant's interest, could
only be admitted into joint possession.**

Where plaintiffs in trespass to try title showed no title, legal or equitable, as to the interest of defendant in the land involved, a common tract set apart by shareholders in a colony, among whom plaintiffs and defendant were all numbered, the full extent of plaintiffs' right was to have their interests adjudicated, and to be admitted into joint possession with defendant.

Error to Court of Civil Appeals of Fourth
Supreme Judicial District.

Action by W. H. Duncanson and others against Lee Howell. From a judgment for plaintiffs, defendant appealed to the Court of Civil Appeals, which reversed, and rendered judgment for defendant (195 S. W. 349), and plaintiffs bring error. Judgment of the Court of Civil Appeals reversed, and cause remanded for new trial, on recommendation of the Commission of Appeals.

C. C. Thomas, of Cotulla, J. O. Rouse, of Vernon, and Hicks, Hicks, Teagarden & Dickson, of San Antonio, for plaintiffs in error.

T. F. Mangum, of San Antonio, for defendant in error.

SONFIELD, P. J. W. H. Duncanson, Ed. C. Taylor, and O. G. Harris, plaintiffs, brought this action against Lee Howell, defendant, to establish title to, and recover possession of, 60 acres of land, known as "Howell Gardens," constituting part of a larger tract of land known as "Bermuda Colony." Plaintiffs sued "for themselves and as trustees for, and as tenants in common with, the shareholders in what is known as 'Bermuda Colony' and 'Brundage Townsite,' in Dimmit county, Texas," alleging that the shareholders numbered probably 600, and that it was practically impossible to give all their names and residences.

Plaintiffs' first amended original petition, in addition to the formal allegations in trespass to try title, alleged, in the alternative, possession of the land in virtue of a gift, and further that they, and those in whose behalf they sued, purchased an undivided interest in the entire Bermuda Colony, and upon division among themselves, by agreement, appropriated to each shareholder specific sections and lots, and kept the remaining undivided 60-acre tract, known as "Howell Gardens," as common or undivided property; that plaintiffs and defendant claimed under common source, defendant deraigning title through an execution sale, under a judgment which plaintiffs alleged had been satisfied long prior to the levy upon and sale of the land by the sheriff to defendant.

It appears from the evidence that in the year 1908 the firm of Hust & Brundage owned 20 sections of land in Dimmit county, which they designated as "Bermuda Colony." In that year the firm proceeded to sell out the colony under a colonization scheme, through the sale of 1,232 shares to various purchasers. A uniform contract was adopted, styled "General Purchaser's Application." These applications were signed by those desiring to purchase shares of the colony; they agreeing to pay for each share the sum of $220, in payments as provided in the contract. The application stipulated that one share should represent an undivided 1/1232 part of the colony, and that the "Guaranties and Privileges" printed on the reverse side of the application

should constitute a part of the contract. The guaranties and privileges, material to this inquiry, were in effect as follows:

When all the shares in Bermuda Colony were sold, a meeting of the shareholders, or their representatives, should be held, Hust & Brundage to notify the shareholders of the time and place of such meeting; that at such meeting a committee of five of the shareholders, or their representatives, should be selected, to whom Hust & Brundage would deliver warranty deeds, with complete abstract, to all the lands and lots in Bermuda Colony, each shareholder being entitled to $1/_{1232}$ part of the entire colony; that at that meeting the shareholders, or their representatives, should determine whether the colony land should be partitioned or held in common, a partition to be had unless by unanimous vote it be determined to hold the land in common; and that the tract of land in Bermuda Colony contained not less than 12,800 acres.

Pending the sale of the shares, Hust & Brundage sold to H. C. King and Eli Howell an undivided one-half interest in the 20 sections constituting Bermuda Colony, and thereafter the joint owners conducted the sale under the firm name of Hust & Brundage Company. This firm continued in existence until on or about the 1st day of February, 1911, when King and Howell sold to Hust & Brundage their interest in the property. All the shares were duly subscribed for, and the first meeting of shareholders and their representatives was called. Practically all the shares were represented, and all the members of the firm of Hust & Brundage Company were present and participated in the proceedings.

Prior to this meeting Hust & Brundage Company caused a survey and a map of the colony to be made, and discovered an excess of 135.92 acres, making a total acreage of 12,935.92 acres. At the meeting of the shareholders, a committee was appointed to look into the matter of the partition of the lands. It reported that, after examining the official map of the colony, and talking with the county surveyor of Dimmit county, they found that the tract contained 12,935.92 acres, that by reason of the uniform character and topography of the land it could be partitioned without prejudice, and that they had so partitioned the same. Through the partition each shareholder was given a 10-acre tract, a residence lot, and an undivided interest in a business lot in the town site of Brundage. The committee recommended the setting aside, without partition, of various tracts, for the mutual interest of the shareholders, in accordance with the suggestion of the Hust & Brundage Company. Included in these tracts was Howell Gardens, the land in controversy. The report of the committee contained this further recommendation:

"In our opinion it will be proper for you to provide—before closing this matter—some form of agency or trusteeship to look after the future interests of the shareholders in the land not partitioned, which is now held in common by you in the ratio of your respective shares in said colony, as well as the lots in the town not partitioned to any club, and for such other purposes or contingencies as might arise concerning the future interest of the several shareholders."

The report of this committee was adopted, the partition accepted, and the commission as recommended provided for. Harry Hust, of the firm of Hust & Brundage Company, was to be chairman, with authority to designate from the pioneer settlers of the colony the two other members. This commission was to act as trustees of the land not partitioned, for a period of three years, and until their successors were elected. The 135.92 acres excess includes the land in controversy, and was not deeded by Hust & Brundage Company to any person. Hust and Brundage each testified that Bermuda Colony in its entirety was sold to the shareholders; that they had been willing at any time to execute a deed to this excess acreage, but did not know to whom the deed should be executed. Hust appointed W. H. Duncanson, one of the plaintiffs herein, as trustee in his stead, and Duncanson named his coplaintiffs as the other two trustees. Duncanson testified that subsequently, at a meeting of the shareholders, he and the other plaintiffs herein were elected trustees.

It is thus seen that plaintiffs assert that title to the land in controversy is in the purchasers of the shares of Bermuda Colony, under the contract; all of the purchase money having been paid. Defendant, Howell, claims under an execution sale. W. W. Gray recovered a judgment against Hust & Brundage, which judgment was assigned to defendant, who caused execution to issue; levy was made on Howell Gardens, and at the sale thereunder defendant became the purchaser. The judgment, execution, and sale were all subsequent to the sale of the shares of the Bermuda Colony and of the first meeting of the shareholders. At the sale, intended purchasers were advised of the claim of title by the shareholders. Defendant credited the amount of his bid on the judgment. Upon the conclusion of the evidence, the trial court instructed the jury as follows:

"You are instructed on the law of this case as follows:

"(1) Under the 'General Purchaser's Application,' with the 'Guaranties and Privileges' printed on the back thereof, shown in evidence as the contract under which the shareholders of Bermuda Colony became purchasers of shares, it is provided that the purchasers of the 1,232 shares (being the whole number of shares) shall be the owners of the entire colony, each share representing 1/1232 part of the

whole of the land, which was represented to be 12,800 acres, and not less than 12,800 acres. The purchasers, upon complying with the terms of their contracts by paying the agreed price, became collectively the equitable owners of such interests in the entire tract, and upon receiving their deeds to the 10-acre tracts and town lots they became the separate owners in fee simple of the tracts specified in their respective deeds.

"(2) The map of Bermuda Colony shows that the same consist of 20 sections of land, each divided into 64 equal parts in a square form, called 10-acre tracts, being 1,280 such tracts, all of them being numbered, except 36, marked 'Town of Brundage,' 4, marked 'King Park and Lake,' and 6, marked 'Howell Gardens'; the latter being the land in controversy. These 20 sections of land contain 640 acres of land, each more or less, and together they contain 12,935.92 acres, or an excess of 135.92 over 12,800. All the land in the 20 sections was platted on the map as Bermuda Colony; the 135.92 acres excess was not reserved from sale to the shareholders, or in any way designated or segregated, and in law the equitable title thereto passed to them as part of the entire colony, when they complied with the terms of their contracts by paying the agreed price of their shares. Their uninterrupted possession is notice to the world of their claim of right.

"(3) The fact that the land in controversy has at times been called a donation does not affect the character of the title therein of the shareholders of the colony.

"(4) The plaintiffs, as shareholders and trustees of the shareholders, for their common benefit, are entitled to maintain this action, although many shareholders living at a distance may know nothing of their trusteeship or of the pendency of this suit.

"(5) It is in evidence that Hust & Brundage Company at the time of the allotment owned 23 shares, which had not been sold by them, and they were therefore owners of an undivided 23/1232 of the land in controversy. This 23/1232 was subject to levy and sale as the property of Hust & Brundage, assignees and successors of Hust & Brundage Company, at the time of defendant's levy, and under the execution sale to him defendant became the owner thereof.

"(6) You will therefore return your verdict for plaintiffs, as trustees, for all the shareholders, which includes the defendant, to the extent of 23 shares."

Verdict was rendered accordingly, and thereon judgment was entered that plaintiffs, as trustees for all of the shareholders of Bermuda Colony, including defendant, to the extent of 23 shares, recover of and from defendant possession of the land sued for; that, as such trustees, plaintiffs be quieted in their possession of the land; and decreeing the cancellation of the deed by the sheriff of Dimmit county to defendant, and the record thereof, except as a muniment of title to $^{23}/_{1232}$ of the land adjudged as belonging to defendant, and ordering a writ of restitution to issue in favor of plaintiffs, as trustees, for possession of the land. On appeal, the Court of Civil Appeals reversed the judgment of the district court, and rendered judgment that plaintiffs take nothing by their suit. 195 S. W. 349.

The Court of Civil Appeals held that plaintiffs and the other shareholders acquired no title, legal or equitable, to the excess acreage; that this excess was found only after a resurvey, and was not contemplated when many, if not all, of the applications for purchase of shares were executed; that no interest in the land in controversy was ever deeded by Hust & Brundage, who held the legal title, to any one, except by the sheriff to defendant, and that there is no contract or memorandum thereof in writing, signed by or authorized to be signed by Hust & Brundage, for the sale or donation of all or any part of the 60 acres.

[1] We think the Court of Civil Appeals reached an erroneous conclusion in the matter of title, and concur in the conclusions of the trial court in paragraphs 1 and 2 of the charge to the jury. Hust & Brundage owned 20 contiguous sections of land, each section supposed to contain 640 acres. Upon this was predicated their guaranty that Bermuda Colony contained not less than 12,800 acres. The evidence establishes beyond the peradventure of a doubt that the 20 sections, in their entirety, were included in the colony, and that it was the intention of the vendors, through the sale of shares, to dispose of the whole of the colony lands. The contracts clearly, and without ambiguity, define the rights of each shareholder. There were 1,232 shares, each share representing "an undivided twelve hundred and thirty-second part of said colony." All the shares were to be subscribed for during the year 1908; failing in which, the money paid by intending purchasers should be returned. It cannot be questioned that the intention was that the shareholders should be and become the owners of the entire colony. This intention is not left to mere inference, but finds expression in the stipulations under "Guaranties and Privileges" which formed a part of the contract. It is provided therein that, when all the shares shall have been sold, the shareholders, or their representatives, should hold a meeting, whereat a committee of five from among their number should be selected by them, to whom the vendors were "to deliver warranty deeds, with complete abstract to *all* of the lands and lots in said Bermuda Colony, and this contract shall entitle the shareholder to one twelve hundred and thirty-second part of said *entire colony.*" The vendors were thus to divest themselves of title to all of the lands and lots in the colony, and the shareholders were to become tenants in common of the colony in its entirety.

It is true, as stated by the Court of Civil Appeals, that the deed was not made by the vendors as provided in the contract, and that, in the language of that court, "on the con-

trary, Hust & Brundage executed deeds to each undivided purchaser for specific property designated by the convention of shareholders. Each deed conveyed a described section of acreage property, certain residence lots in the town of Brundage, and a designated interest in a described business lot in Brundage." It is also true that the contract provides in effect that, when deeds to the various shareholders for the particular part apportioned to each have been delivered, the same should be accepted in full satisfaction of the share applied for in the application. These facts, viewed in the light of the attending circumstances, in no manner militate against our view.

The contract contemplated that the land should be held in common by the shareholders, or partitioned between them by a committee appointed for that purpose. Only through a unanimous vote of the shareholders, or their representatives, could the lands be held in common. The committee was appointed. It had before it the map, recognized as the official map of the colony, based upon the survey made by the vendors, showing the excess. This map showed the colony to consist of 20 sections, subdivided into 10-acre tracts, all being numbered, except the tracts marked and designated thereon "Town of Brundage," "King's Park," and "Howell Gardens." The committee's report to the shareholders was based upon this survey and map, and stated that the colony contained 12,935.92 acres. The partition, recommended by the committee and accepted by the shareholders, was with reference to the survey and map. The committee advised the shareholders to accept the suggestion made by vendors that certain tracts, including Howell Gardens, be left unpartitioned, to be held in common by the various shareholders, and that a commission be appointed to look after the interests of the shareholders in such tracts. From the fact that under such circumstances the shareholders received deeds to specific portions of the property, no inference arises that they deemed the partition as including all of the land to which they were entitled, and that through the acceptance of the deeds they forfeited their rights in the lands not partitioned. They accepted the partition and the deeds in virtue thereof, in view of the recommendation by the committee as to the unpartitioned land. But, whatever their belief, it did not alter or change the legal effect of the contract. No element of estoppel is present. The vendors were in attendance upon the meeting, acquiesced in the proceedings, and recognized the title of the shareholders to all of the colony, including the land in controversy. The evidence establishes that the shareholders went into immediate possession of the land in controversy, through tenants; the leases being executed by some of the shareholders in the belief that they were the duly appointed agents of all of the shareholders with reference to the unpartitioned land. We conclude that the equitable title to the land in controversy vested in the shareholders in virtue of their contracts of purchase and the payment of the purchase money.

Paragraph 5 of the trial court's charge to the jury, the verdict therein instructed, and the judgment, recognize defendant as the owner of an undivided $23/1232$ part of the land. In view of this, the judgment decreeing exclusive possession of the land in controversy to plaintiff as trustees for all of the shareholders of the colony, including defendant, was clearly erroneous.

[2] Plaintiffs and defendant, in the view of the trial court, were tenants in common. One tenant in common may maintain an action of this character against a cotenant, when the latter has ousted him of possession of the property owned in common. The pleas and answer of defendant clearly show that he recognized no right of common ownership, and this is held equivalent to an ouster. St. L., A. & T. Ry. Co. v. Prather, 75 Tex. 53, 12 S. W. 969.

[3, 4] Plaintiffs had title to an undivided interest. This would be sufficient to warrant a recovery of the entire tract as against a trespasser. This right does not, of course, exist as against a cotenant. The judgment was evidently based upon the conception that plaintiffs were trustees for all of the shareholders. Under the evidence no such relation exists. The legal title remained in Hust & Brundage; the equitable title passing to the shareholders. The commission appointed by the shareholders, though called trustees, were in fact mere agents, not vested with the title of any of the shareholders. It is in this right that plaintiffs sought recovery of all of the lands.

[5, 6] One without title cannot maintain an action of this character for the use or benefit of another having title. Hooper v. Hall, 30 Tex. 154; Birmingham v. Griffin, 42 Tex. 147; Heard v. Vineyard, 212 S. W. 489. The court recognized and established defendant's interest in the land. He had the same right of possession and enjoyment of the land as plaintiffs. As to his interest and that of the other shareholders, plaintiffs showed no title, legal or equitable. It follows that the full extent of plaintiffs' right was to have their interests adjudicated, and be admitted into joint possession of the land with defendant. Boone v. Knox, 80 Tex. 642, 16 S. W. 448, 26 Am. St. Rep. 767; Hess v. Webb, 103 Tex. 46, 123 S. W. 111.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and the cause remanded for a new trial.

PHILLIPS, C. J. We approve the judgment recommended in this case, and the holding of the Commission on the question discussed.