## SMITH et al. v. KOUNTZE et al.

### No. 8644.

Court of Civil Appeals of Texas. Austin.

June 8, 1938.

Rehearing Denied Sept. 21, 1938.

Woodruff & Holloway, of Brownwood, and McClellan, Lincoln & Jones, of Waco, for appellants.

Kenneth S. Finlayson, of Omaha, Neb., McCartney, McCartney & Johnson, of Brownwood, and Coke & Coke and Julian B. Mastin, all of Dallas, for appellees.

BLAIR, Justice.

Appellant, Mrs. Grace W. Smith, joined pro forma by her husband, A. Foster Smith, sued appellees, Charles T. Kountze and Denman Kountze, in trespass to · try title to recover an undivided $\frac{107}{27000}$ths interest in certain lands situated in several Texas counties. Appellees answered by general denial and plea of not guilty. The trial resulted in judgment for appellees; hence this appeal.

The common source of title is a trust agreement, executed June 11, 1908, by Charles T. Kountze and Luther L. Kountze, trustees, to the holders of the certificates of interest in the trust estate. Luther L. Kountze died in 1925, and Denman Kountze succeeded him as trustee. The main purpose of the trust was to sell 69,032.52 acres of land and 457 town lots, situated in several Texas counties, and to divide the proceeds among the certificate holders, or their heirs or assigns. The trust was to terminate as follows: "The trust hereby created shall be closed and wound up as quickly as the best interest of the certificate holders will permit, but in no event shall said trust exist or continue longer than twenty-five years from the date hereof."

The 25-year period ended June 11, 1933, and about 21,000 acres of the trust lands, situated in several Texas counties, remained unsold. The trust period having ended, and there being several beneficiaries among whom the residue of the trust estate is to be distributed, the question presented is whether such residue trust estate shall pass to the holders of the certificates of interest as tenants in common, or whether same shall be sold by the trustees and the proceeds divided among the certificate holders. The determination of the question depends upon an interpretation of the trust instrument in the light of the circumstances attending its execution.

Prior to the execution of the trust agreement the lands were owned in fee simple by the Texas Land and Cattle Company, a Texas corporation, herein referred to as Land Company. In compliance with a Texas statute requiring corporations to sell lands owned by them, the Land Company sold the lands to Charles T. Kountze and Luther L. Kountze. The sale originated upon the written proposal of the purchasers, made May 2, 1908, the price offered and accepted being $534,000, paid in cash. Augustus F. Kountze, as president of the Land Company, conveyed the lands by eighteen separate general warranty deeds, dated June 2, 1908, all of which were identical except as to the lands conveyed and the prices paid; and on the same date said Augustus F. Kountze, as president of the Land Company, also executed what was described as a "blanket deed" conveying all of the lands conveyed by the eighteen deeds to Charles T. Kountze and Luther L. Kountze.

Each of the eighteen separate deeds and the blanket deed declared the purpose or intention of the parties was "to grant and convey by this instrument all of the above described property in fee simple to the said Charles T. Kountze and Luther L. Kountze, as joint tenants, with all the rights of such joint tenants at common law, including that of survivorship, to the end that upon the death of one of the aforesaid grantees, his interest in such of the aforesaid property as is then still held by said grantees, jointly, shall descend to and vest in the surviving grantee, his heirs and assigns, and shall not descend to and vest in the heirs or legal representatives of such deceased grantee." The general warranties provided that the lands were conveyed "unto the said Charles T. Kountze and Luther L. Kountze, joint tenants, as aforesaid, their heirs, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

On June 11, 1908, the said Charles T. Kountze and Luther L. Kountze executed and delivered to the certificate holders, their heirs and assigns, the "Declaration of Trust," the preamble of which reads in part as follows:

"Whereas the Texas Land and Cattle Company, a corporation * * * has by eighteen (18) certain deeds dated the 2nd day of June, 1908, granted, bargained, sold and conveyed to Charles T. Kountze and Luther L. Kountze, of Omaha, Nebraska, as joint tenants with all the rights of such tenants at common law, including the right of survivorship, and to their heirs and assigns all that certain real estate situated in the State of Texas in said deeds mentioned and described. * * *

"Whereas the price paid by said Charles T. Kountze and Luther L. Kountze for the aforesaid property amounting to the aggregate of $534,000.00 has been refunded and repaid to them by the following persons in the following proportions, to-wit: (Here follow the names and the amounts paid by the several certificate holders.)

"Whereas, said Charles T. Kountze and Luther L. Kountze are about to make, execute and deliver to each of the parties aforesaid so refunding and repaying them a portion of the purchase price so paid by them for said property certificates evidencing the share of such party in the rights and benefits created by and provided for in this Declaration of Trust, such party being entitled to one share for each $17.80

so refunded and repaid as aforesaid to said Charles T. Kountze and Luther L. Kountze. The total number of shares for which certificates are to be issued being 30,000. Said certificates to be in form or substantially in the form following, to-wit: * * (The form of the certificate is set out here.)

"Aforesaid certificates so to be issued as aforesaid and the rights and benefits acquired thereby under this Declaration of Trust shall constitute the full and only consideration for the several sums of money so repaid and refunded to the said Charles T. Kountze and Luther L. Kountze as aforesaid.

"Now, therefore, we the said Charles T. Kountze and Luther L. Kountze, for ourselves, our heirs and assigns do, by these presents, make known, admit, and declare that all of the said property conveyed to us as aforesaid, by said Texas Land and Cattle Company, was conveyed to us and we now hold and shall and will continue to hold same and any and all income, revenue, and proceeds thereof, and every part thereof, upon the terms, trusts, and for the purposes following, that is to say: * * *"

Then follow eleven sections of the Trust Agreement, the substance or material portions of which are as follows:

Section I provides that Charles T. Kountze and Luther L. Kountze shall be trustees; and further provides for the election or appointment of a successor in the event either shall die or resign.

Section II provides that "the trustees shall have and exercise the management, control, and ownership, both legal and equitable, of said property conveyed, * *; but they shall account to the certificate holders for all of said property. And all other property which may become subject to the trust hereby created and for the proceeds thereof and the income and revenue therefrom arising; * * *

"The trustees may, whenever they shall deem it necessary or advisable for the protection or benefit of the aforesaid property, or any part thereof, purchase any outstanding title, interest, or claim, or alleged title, interest or claim, in or to said property, or any part thereof; and also purchase other lands and property, and the same, when so purchased, shall be subject to all the trust, powers, and provisions of this instrument. * * *"

"They shall have all the powers in respect to said property of an absolute owner. Said powers shall include, among others, the full and unrestricted power of improving, leasing, incumbering, selling, granting, and conveying with or without covenants of warranty in their discretion, or otherwise disposing of the same or any part or parcel thereof or interest therein, in fee simple or otherwise; * * *"

Section III provides that "the holders of said certificates shall be entitled to participate according to the number of their shares in the rights and benefits of the certificate holders under this instrument, and they shall be entitled to all the benefits of all the lands and other property and the proceeds, revenues and income thereof, which are or become subject to the terms of this instrument. * * * It is also expressly agreed by and between the persons, firms and corporations who at any time may be the holders or owners of said certificates that the said certificates and the rights and benefits evidenced thereby are and shall be held and construed to be in all respects personal property and shall in no wise pass to or vest in the heirs or devisees of any owner or holder thereof as real estate. * * *"

Section IV provides for the keeping of books and accounts by the trustees showing the condition of the trust estate, and for the distribution pro rata among the certificate holders of any moneys belonging to them under the terms of the trust agreement.

Section V provides for the making of an annual report in October of each year showing the condition of the estate and the manner of its approval by the certificate holders.

Section VI provides that "Meetings of certificate holders may be called by the trustees whenever they deem it necessary" or by certificate holders as provided in trust instrument. "Notice of all meetings shall be in writing, signed by the party or parties giving same, and shall be sent by registered mail to each certificate holder at his address upon the books of the trustees. * * *"

Section VII provides that "the certificate holders at any meeting duly called for that purpose, but not otherwise, shall have power to order and direct a sale or disposition of all the property held by the trustees under the trust of this instrument and a winding up of the trust; provided that

such order and direction must be authorized by vote of the holders of at least a majority in the amount of the total certificates outstanding; * * *"

Section VIII provides for compensation to the trustees and for their expenses in carrying out the trust.

Section IX provides that "Any trustee under this instrument may be removed and a successor appointed at any time by a written instrument signed by the holders for the time being of not less than a majority in amount of the total outstanding certificates, * * *

"Any trustee elected or appointed under the provisions of this instrument, upon his acceptance in writing of such trusteeship, shall be vested with all the rights, title, powers and duties of a trustee hereunder as fully as if named herein as a party hereto. Any trustee resigning or removed as aforesaid, and the heirs, executors, devisees or other representatives of any deceased trustee, and the remaining trustee then acting, if there be one, shall make, execute and deliver such special warranty deeds or other instruments of conveyance, transfer or assignment as shall be necessary or proper to vest in the trustees for the time being jointly with survivorship as at common law the title to the lands and premises and other property subject to the trusts of this instrument."

Section X provides that "The trust thereby created shall be closed and wound up as quickly as the best interests of the certificate holders will permit, but in no event shall said trust exist or continue longer than twenty-five years from the date hereof."

Section XI provides that "Inasmuch as during the continuance of the trust hereby created, it may happen by reason of events and circumstances not now foreseen that it may be for the best interest of all parties hereto to make some changes or modifications in the provisions of this instrument, it is hereby expressly agreed and provided that this instrument may at any time and from time to time be changed or modified by a vote of the holders of not less than a majority in amount of the certificates outstanding at a meeting of the certificate holders called and held upon the notice and in the manner hereinbefore provided; provided, however, that no change or modification shall be made in this instrument * * * which shall have for its object to diminish the rights and benefits of the certificate holders in respect to the property or proceeds thereof subject to the trust of this instrument."

The trial court interpreted the trust instrument as directing the trustees to sell the trust lands and to divide the proceeds among the certificate holders; that due to unfavorable economic conditions prevailing from 1925 to the end of the trust period in 1933, the trustees were unable to sell all of the trust lands; that the trustees remained charged with that duty after the termination of the trust in 1933; that under the terms of the trust instrument the interest of the certificate holders was not in the trust lands, but in the proceeds of the sale thereof, which was personalty; and that appellant as such certificate holder was therefore not entitled to maintain this suit in trespass to try title.

In making this interpretation of the trust agreement, the trial court apparently relied upon and followed numerous cases wherein a will or instrument confers on an executor or trustee a power of sale, and specifies the time within which it is to be exercised; and holding that such power does not cease because of failure to exercise the power within the time specified, but may be exercised after the expiration of the period, and unless the will or instrument is expressly to the contrary. These rules are well settled in our jurisprudence, but have no application to the instant case. Generally, such rules apply to cases where there are three parties to the trust,—the settler, the trustee, and the cestui qui trust. In the instant case only the trustees and the beneficial certificate holders are involved in the trust agreement, and it is a business trust.

Appellant contends that the trust agreement terminated at the end of the specified 25-year period; that after its termination the residue trust estate or property in its actual physical condition passed to the certificate holders as tenants in common; and that as such certificate holder she is entitled to joint possession with appellees, who are also certificate holders and in possession of all of the properties; and that appellant is therefore entitled to bring this suit in trespass to try title. We sustain this contention.

■ The trust instrument specifically provides that the certificate holders are the owners of the lands and that the trust is created for the purpose of selling same and dividing the proceeds. By it the trus-

tees "make known, admit and declare" that all of the lands conveyed to them by the Land Company are conveyed in trust and that they hold and will continue to hold same upon the terms and trusts set forth in the instrument. It further provides that the certificate holders "shall be entitled to all of the benefits of the land and other property and the proceeds, revenues and income thereof which are or become subject to the terms of this instrument". It further provides that the trust instrument may be modified by the certificate holders; but that no modifications shall be made which "impair the rights and benefits of the certificate holders in respect to the property or the proceeds thereof, subject to this trust agreement". It further provides that the certificate holders may require the sale of all the property at any time; and that the legal and equitable title to the lands were conveyed to the trustees for the purpose of carrying out the trust within the time specified. The trust agreement specifically provides that the trust shall cease to exist at the end of the 25-year period. In such situation about as clear a statement of the law applicable as can be found is stated in American Law Institute on Trusts, Sec. 347, p. 1078, as follows: "If upon the termination of the trust there are several beneficiaries among whom the trust estate is to be distributed, whether the trustee is under a duty to convey the property to the beneficiaries as tenants in common, or to divide the property and distribute it in kind, or to sell it and distribute the proceeds, depends upon the terms of the trust and in the absence of such terms upon what under all the circumstances is reasonable."

■ The trust instrument did not specify any method of distribution of the residue of the trust after its termination, and the method of its distribution must be determined from what under all the circumstances is reasonable. In determining the best method of distribution courts have looked: (1) To the language used in the trust instrument; (2) to the purpose of the trust; (3) to the character of the subject-matter of the trust,—whether it is land chattels, securities, or otherwise; (4) to the number of beneficiaries and the size of their respective shares to which the several beneficiaries are entitled. And where as in the instant case the subject-matter of the trust is land, the same authority states at page 1081: "If upon the termination

of the trust there are several beneficiaries among whom the trust estate is to be distributed, and the trust estate consists in whole or in part of land, the trustee is ordinarily under a duty on the termination of the trust to convey the land to the beneficiaries as tenants in common according to their respective shares."

And this same authority states at page 1088: "Where the trust property is transferred by the trustee to the beneficiaries as tenants in common, or where the legal title to the trust property vests in them without a transfer by the trustee, any one or more of them can thereafter maintain a suit for partition, and in this suit the court can decree a partition in kind or a sale in accordance with the law of the State governing actions for partition."

■ When the trust instrument is construed in the light of these rules, the circumstances attending its execution as above detailed, and the law of Texas which holds that business trust properties upon the termination of the trust vest in the beneficiaries of the trust as tenants in common, it clearly appears that appellant is entitled to bring this suit as a tenant in common of the residue trust estate, the trust having terminated by its own terms. It also clearly appears that such is the best method of distributing said residue trust estate among the beneficiaries thereof. The estate owes no debts and it owns more than 21,000 acres of lands situated in several Texas counties. It is no doubt capable of partition in kind. The sale of the land is slow, due to economic conditions which have prevailed for several years. The beneficiaries are not numerous. Their interests in the trust property are definite and fixed by the instruments which they hold and as evidenced by the trust instrument. The trust instrument did not require the lands to be sold by the trustees in all events, and the trustees so construed it and refused to sell the lands on a depressed market. Two or three of the certificate holders own as tenants in common the larger part of the residue trust estate. And since the minority certificate holders have the right to demand, at the termination of the trust, their share of the residue trust estate, we hold that appellant is entitled to maintain this suit in trespass to try title.

■ In this connection appellees point to the terms of the certificates and of the trust instrument which provide that the

interest of the certificate holders shall be "in all respects personal property"; and they contend that such provisions constitute an equitable conversion of the land into personal property; and that therefore the certificate holders have no interest in the land itself; and are not entitled to maintain an action in trespass to try title for joint possession of it. We regard this provision as having reference to the rule of descent and distribution particularly provided for in the trust instrument. It is immediately followed by the recitation and provision, "and shall in no wise pass to or vest in the heirs or devisees of any owner or holder thereof as real estate." It is clear that the purpose of the provision was to insure to the trustees during their tenure and pending the trust the status of owners of the legal and equitable title so that they might effectively carry out the trust. This is made manifest from the other provisions of the trust instrument which declare over and over again that the holders of the certificates are entitled to the lands and to the proceeds thereof, and that the trustees must account to them for the same.

■ Nor do we sustain the contention of appellees that if appellant is the equitable owner of the land, she has no right to assert the claim until the trust has been judicially declared to be at an end, and that its status cannot be determined without making either the trustees or the certificate holders parties to the suit. The trust agreement ceased to exist by its own terms at the end of the 25-year period. It owed no debts. Its property, therefore, vested at once in the certificate holders as tenants in common in accordance with their respective interests. This rule has been applied in Texas and other jurisdictions to all forms of terminated business trusts, to joint stock associations, and to partnerships. In this business trust the legal and equitable title was in the trustees, but such ownership was fiduciary, and the certificate holders were and are the ultimate proprietors of the property, which was held and managed for their benefit; and since the trust has terminated by its own terms and there are no debts owing, nothing is to be done, and the title to the property vested in the certificate holders as tenants in common. Allen v. Long, 80 Tex. 261, 266, 16 S.W. 43, 26 Am.St.Rep. 735; Gay v. Jackman, Tex.Com.App., 254 S.W. 927; Duncanson v. Howell, Tex.Com.App., 222 S.W. 232; Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554; Peabody v. Receiver, 215 Mass. 129, 131, 102 N.E. 435, 436; Montgomery v. Trueheart, Tex.Civ.App., 146 S.W. 284; Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145; Wisdom v. Wilson, 59 Tex.Civ.App. 593, 127 S.W. 1128, 1134; Young v. Bradley, 101 U.S. 782, 25 L.Ed. 1044; Baldwin v. Johnson, 95 Tex. 85, 65 S.W. 171; Magnolia Park Co. v. Tinsley, 96 Tex. 364, 73 S.W. 5.

■ Nor do we sustain the contention of appellees that until the trust agreement is adjudged terminated, the interest of appellant is but a mere unripened equity; and that she, having plead her title generally, cannot maintain this suit without specially pleading her title. The first point is determined under the above proposition; and the law is settled that, appellant not having specially plead her title, she may prove an equitable title in support of her action in trespass to try title. Edwards v. Barwise, 69 Tex. 84, 6 S.W. 677; Wade v. Boyd, 24 Tex.Civ.App. 492, 60 S.W. 360. And while appellant is not entitled to recover the exclusive possession, she is entitled to judgment admitting her to joint possession with appellees. Duncanson v. Howell, supra; St. Louis, A. & T. Ry. Co. v. Prather, 75 Tex. 53, 12 S.W. 969; 11 Tex.Jur. 429, 473.

The judgment of the trial court is reversed and judgment is rendered for appellant in accordance with this opinion for title and joint possession of the land sued for and for rentals due appellant, but as to the amount of rentals due appellant, the cause is remanded for determination by the trial court of that issue only.

Reversed and rendered in part and in part reversed and remanded.