HOUSTON OIL CO. OF TEXAS v. MILL-
ER & VIDOR LUMBER CO. et al. †
(No. 6709.)

(Court of Civil Appeals of Texas. Galveston.
April 22, 1915. Rehearing Denied
May 27, 1915.)

1. TRESPASS TO TRY TITLE ⊕═6 — TITLE OF
PLAINTIFF.
In trespass to try title, plaintiff can recover
only on the strength of his own title, and de-
fendant need not show title in himself.
[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 5–9, 15, 16; Dec. Dig.
⊕═6.]

2. TRESPASS TO TRY TITLE ⊕═41—TITLE OF
PLAINTIFF—FINDINGS—EVIDENCE.
Where in trespass to try title plaintiff
claimed under third persons as heirs of the orig-
inal grantee of a certificate under which the
land in controversy was located and patented,
while defendants claimed under others as heirs,
and the court under evidence justifying it found
that the third persons under whom plaintiff
claimed were not the heirs of the original gran-
tee of the certificate, a verdict for defendants
was justified, though the evidence did not sus-
tain the claim of defendants.
[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ⊕═
41.]

3. PUBLIC LANDS ⊕═178 — CERTIFICATES —
TRANSFERS—EVIDENCE.
The original certificate to county lands is-
sued to D. was in possession of C. prior to the
location of the land under it. C. claimed the
certificate as his own and located the land
by virtue of it, and obtained a patent from the
state. The patent was in his possession at his
death and continuously thereafter in the pos-
session of his heirs, and C. and his heirs con-
tinuously claimed the land since its location in
1881, and they paid the taxes since the land
was patented, and since 1891 they were in pos-
session through tenants. Held, to show a
transfer of the certificate from D. to C.
[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 579–582; Dec. Dig. ⊕═178.]

4. PUBLIC LANDS ⊕═178—UNLOCATED LAND
CERTIFICATE—TRANSFERS.
An unlocated land certificate is a chattel
and may be transferred by parol.
[Ed. Note.—For other cases, see Public Lands,
Cent. Dig. §§ 579–582; Dec. Dig. ⊕═178.]

5. ADVERSE POSSESSION ⊕═114 — EVIDENCE —
SUFFICIENCY.
Evidence held to justify a finding that de-
fendants acquired title under the five and ten
years' statutes of limitations.
[Ed. Note.—For other cases, see Adverse Pos-
session, Cent. Dig. §§ 682, 683, 685, 686; Dec.
Dig. ⊕═114.]

Appeal from District Court, Orange Coun-
ty; A. E. Davis, Judge.

Action by the Houston Oil Company of
Texas against the Miller & Vidor Lumber
Company and others. From an adverse judg-
ment, plaintiff appeals. Affirmed.

Hightower, Orgain & Butler, of Beaumont,
for appellant. Townes, Foster & Hardwicke,
of Beaumont, for appellee Miller & Vidor
Lumber Co. J. B. Bisland and O. R. Shol-
ars, both of Orange, for appellees Stephen
Cleveland, D. E. Simmons, and P. P. Wil-
liamson. J. F. Lanier, of Beaumont, for ap-
pellee John H. Broocks.

PLEASANTS, C. J. This is an action of
trespass to try title brought by appellant
against the Miller & Vidor Lumber Compa-
ny, Stephen Cleveland, D. E. Simmons, and
P. P. Williamson to recover the John Daven-
port 640-acre survey of land in Orange coun-
ty. Plaintiff also made John H. Broocks a
defendant and sought to recover against
him, as remote warrantor, the sum of $2 per
acre for any portion of land in controversy
adjudged to defendants in this suit. Each
of the defendants except the defendant
Broocks answered by general demurrer, plea
of not guilty, and pleas of limitation of three,
five, and ten years. The answer of defend-
ant Broocks contains a general demurrer and
several special exceptions, the nature of
which it is unnecessary to state. He further
answered by general denial and special pleas
in which it is averred, in substance, that the
title to the land was good at the time he
warranted said title to plaintiff's vendor;
that, if he is mistaken in this averment, he
avers that defendant Cleveland was in ad-
verse possession of the land at the time this
defendant sold it and warranted the title to
plaintiff's vendor and has held such adverse
possession continuously since said date, and,
if said title was not good, he was liable upon
his warranty immediately after the execu-
tion of his deed of conveyance, and suit up-
on said warranty is barred by the statute of
limitation. He further pleaded that defend-
ant Cleveland, and other defendants who
claim under him, have acquired title to the
land against plaintiff since the date of this
defendant's warranty under the statute of
limitation of three, five, and ten years, and
therefore he is not liable upon said war-
ranty. The trial in the court below without
a jury resulted in a judgment in favor of
all defendants that plaintiff take nothing by
its suit and awarding defendant Cleveland
600 acres of the land and defendant Simmons
40 acres.

The survey of land in controversy was lo-
cated under a certificate issued by the board
of land commissioners for Orange county to
John Devenport on October 19, 1846. The
land was patented to John Devenport "and
his heirs and assigns" September 21, 1881.

Plaintiff claims under the heirs of John
Devenport, who was killed in Uvalde coun-
ty in 1859. These heirs in May, 1899, ex-
ecuted a power of attorney to Webb & Fen-
ley, authorizing said firm to take possession
of and sell any land owned by said grantors in
Orange and Cherokee counties. In Septem-
ber, 1899, Webb & Fenley, acting under
this power of attorney, conveyed the survey
in controversy by deed with special warran-
ty to R. F. Ashley for a consideration of
$400. Ashley conveyed to the Beaumont
Lumber Company by general warranty deed
on October 21, 1899. On the day this last
conveyance was made, defendant John H.

Broocks executed an instrument reciting that Ashley held the title to the land in trust for him and the $1,260 consideration recited in the deed from Ashley to the Beaumont Lumber Company had been paid to him, and in consideration of these facts he bound himself to warrant the title of the land to the grantee in said deed. The Beaumont Lumber Company conveyed the land to appellant on June 5, 1902. Mrs. Mary C. Fenley, one of the heirs of John Devenport, under whom appellant claims, testified:

"I was born in 1849. I reside in Uvalde county, Tex., and have lived there since 1854, excepting one year. My father's name was John Devenport. He is dead. He was killed by Indians in Uvalde county in 1859. My understanding of the family history is that my father was born in Missouri, February 8, 1827. Father lived in the state of Arkansas before he married my mother. After his marriage to my mother in Kaufman county, Tex., January 11, 1849, he resided in Texas until his death. He moved from Kaufman county, Tex., to Lockhart, Tex., from Lockhart to Uvalde county, Tex., where he lived one year. He moved to Medina county, Tex., where he lived about one year, and from there back to Uvalde county, Tex. He moved from Medina county to this (Uvalde) county about the year 1856. I am not able to state what year he went to Kaufman county, nor exactly the year he moved from there, nor the exact year he lived in Lockhart, Tex. My mother is dead. She died August 15, 1903. I do not know whether my father ever transferred to any one the certificate covering the 640 acres in Orange county. I was the oldest child of my father and mother, and was about 10 years old when my father died. I was about five years old when my father first moved to Uvalde county, Tex. He lived there about one year, moved to Medina county, and moved back to Uvalde county in about a year, so that I was about seven years old when he permanently moved to Uvalde county."

On cross-examination, Mrs. Fenley testified substantially as follows:

"I was born in Kaufman county, Tex., October 19, 1849. I do not know any of my father's friends and neighbors in 1846. I do not know where my father resided in September, 1848. I do not know who John Long was, who was living in Texas in 1848. I never heard my father speak of John Long. I was too young for it to make any impression, if he did, as I was only ten years old when he was killed by the Indians. Of my own personal knowledge, I do not know that my father owned land in East Texas, or any land certificates at his death. The reason we did not warrant the title in the deed dated September 18, 1899, executed by us through our attorneys in fact, Webb & Fenley, was because we did not know the condition of the title at that time. I had never heard Father speak of it. I understood that we had land in East Texas somewhere, which we were entitled to as heirs of my father, John Devenport. It was not because we did not think we had no title to it. The reason the heirs sold 640 acres of land, worth approximately $6,000 or $7,000, for $400, was we understood the land was of very little value and accepted that amount because we thought it was the best we could do. It was not because we knew the land did not belong to my father, or his heirs, for we claimed it in good faith. I do not know that my father never lived in Houston county, Tex., at any time. If my father ever resided in Houston county, Tex., I never heard of it. He was not a very talkative man, and besides, I was too young to have recollected it if he had said anything about it. The facts herein referred to as to my father's places of residence were learned by me from my mother and family history generally."

The certificate under which the land was located was No. 347, class 2. Immediately beneath this certificate, and upon the same page of paper, is the following certificate of acknowledgment:

"The State of Texas, County of Houston. John Devenport, personally appeared before me at my office in the town of Crockett and acknowledged that he signed and sealed and delivered the anext deed or transfer for the purpose of sale therein mentioned. Given under my hand and seal of office at the town of Crockett this 20th day of Sept., A. D. 1845. [Seal] John Long, C. J. & Exoficio N. P. H. C."

The certificate was located by Frank Cleveland, the father of appellee, Stephen Cleveland, and the fees for the patent were paid by him and the original patent delivered to him by the land office, and it was in his possession up to the time of his death, and since that time has been in possession of defendant Stephen Cleveland. The land was assessed for taxes in the name of Frank Cleveland and his heirs from 1882 to 1909.

The parties under whom appellant claims never rendered the land for taxes or paid any taxes thereon prior to 1902.

Mrs. Merriman, the mother of Stephen Cleveland, testified:

"I have been married twice. The first time I married, I married Frank Cleveland, and the last time Mr. Merriman. My first husband died in May, 1885. I know whether he claimed the John Devenport 640 acres in Orange county. Mr. Cleveland was a surveyor. He surveyed this land for himself. He claimed to own this land. He was claiming it all the time. I have seen the patent to the land. I have it. He had it in his possession when he died. He paid the taxes on it and always claimed to be the owner of it up to the time he died. I suppose that he had a land certificate in his possession when he surveyed it. He told me he was surveying it for himself, and he claimed to be the owner of it. My son, Steve Cleveland, has been acting as my agent and looking after it. We are claiming to be the owners of it at the present time. He was county surveyor 11 years. The books and everything was in our house when he died in 1885. I said awhile ago I supposed Mr. Cleveland had the John Devenport certificate at the time he surveyed this land. As to whether or not that is a fact, will say I know he would not have surveyed it if he had not had it. * * * My husband told me he had this surveyed for himself, and he told me that he owned the certificate. He told me that he had the certificate, and that he owned it, and that he made the survey himself. He had the Mary Hawley survey, and we lost that because he lost his transfer; but the other one we have always held and claimed. We have always claimed this one and paid the taxes on it. He told me that he made that survey for himself because he owned the certificate. I do not know that I have ever particularly looked for it (for John Devenport's certificate). I cannot say that I have made any search for the original certificate to the John Devenport 640 acres. I did not really know I had to hunt for it. I never was called on to hunt for the original certificate, and I did not know I had to, and I have not hunted for it. Steve Cleveland is my oldest child. At the time of his father's death he was too young to know anything about it."

Steve Cleveland, oldest son of Frank Cleveland and Mrs. Merriman, formerly Mrs. Cleveland, testified for defendants as follows:

Witness was asked the following question: "I will ask you if you at any time since the death of your father searched for a transfer from John Devenport to any one of the certificate of 640 acres of the John Devenport?"

Answer: "I made a search to see if I could find a transfer down there of the certificate and could not find it. I found no transfers at all. I never searched for any transfer in the land office at Austin. I had search made at Austin for it for me. Judge Sholars attended to it. I do not know whether he found it or not; he may have found it. The only search I made was among my father's papers, and I never searched anywhere else."

Defendants offered in evidence a tax deed from the sheriff of Orange county conveying the John Devenport 640-acre survey of land to Frank Cleveland. This deed recites that there was due the state of Texas and county of Orange for taxes on said land from the year 1881 the sum of $56.56, and that the land was sold for said taxes and bid in by Cleveland for $10.81.

Defendants also introduced a deed from Mary Pickering and others, heirs of John Devenport, who died in Houston county in 1877, dated September 22, 1911, and conveying the land in controversy to Stephen Cleveland, Anna L. Cleveland, and Carrie Merriman for a consideration of $200. Mrs. Pickering testified for the defendants as follows:

"I am 72 years old and live in Trinity county, Tex. I was acquainted with John Devenport; he was my father. I knew him from infancy. He lived in Houston county, Tex., and died there in 1877. He told me that he came to Houston county in 1832. He never did live in any other county after he settled there and lived there until his death in 1877. Ellen Devenport was my mother. B. D. and G. D. Devenport are my brothers, and Quinn Green is my sister. My mother died in May, 1912. My brothers and sisters are still living, so far as I know. My father, John Devenport, was married once before he married my mother. My father, by his first wife, had seven children; all of them dead. One of the sons of my father by his first wife left children surviving him. I can't say whether they are living or dead. One of the girls of my father by his first wife left three children surviving her. They are now living in Houston county."

On cross-examination she testified:

"My father had no middle name. His name was John Devenport. He spelled his last name Devenport. He was never known by the name of Davenport. Name of my relatives that I ever heard of spelled their name Davenport. I had no old letters or papers in my possession that was signed by my father. My father was born and raised in the northern part of the state of Alabama. He moved from Alabama to Missouri and from that state to Houston county, Tex. He was between 30 and 40 years old when he moved to Houston county; I think 32 or 34 years old. He was 22 years old when he was married the first time in Alabama. My father never lived in any other place that I ever heard of except Houston county after he moved there from Missouri. I knew a man named James Williams very well. I knew a man by the name of Ab Gibson. I suppose he is the person you refer to as Absalom Gibson. I knew of Joseph Bowman, and have heard my father speak of him also. I have heard my father speak of certain persons by the name of Thomas. Can't say that I ever knew Z. F. Thomas. I have heard my father speak of J. R. Blanton. I knew him myself. I have never heard my father speak of W. B. Brittain. It seems that I have heard of that name, but can't say that my father ever knew the party inquired about. Yes, I knew James Gibson well.

"As I understand the matter, my father at one time owned a certificate entitling him to 640 acres of land, which certificate he sold, as we understand. We did not claim under this certificate, because our father sold it at an early date, probably before its location. We did not pay taxes on it because we never knew that we owed any taxes on it. I, together with B. D. Devenport, G. D. Devenport, Quinn Green, and Ellen Devenport, made a deed to Stephen Cleveland and others to a survey of land in Orange county of 640 acres. I knew nothing about the value of the land at the time I sold my interest, but am still satisfied with my trade. Judge O. R. Sholars talked with me about this land now in litigation in Orange county, and he is the only person who ever talked with me about this land. He came to me and asked me if I was a child of John Devenport, and I told him that I was. He then asked me about my father in general conversation. I gave him the history of my father about as I have given it in these depositions. Gave him the name of his children."

In rebuttal, appellant offered in evidence a copy of the deed from John Devenport of Houston county, dated November 9, 1846, conveying to James Gibson of Cherokee county the grantor's unconditional certificate for 640 acres of land. The certificate conveyed by this deed was No. 347, third class, and was issued by the board of land commissioners of Houston county on October 19, 1846. This deed was filed for record in the office of the county clerk of Cherokee county on September 6, 1848, and duly recorded. It was witnessed by Z. F. Thomas and J. R. Blanton and acknowledged before W. B. Brittain, county clerk of Cherokee county. On May 27, 1847, 320 acres was located under this certificate and a patent therefor issued by the state to James Gibson on January 27, 1851. This location was made in Cherokee county. The remainder of this certificate was located on 320 acres in Cherokee county on December 28, 1847. It is not shown that this 320 acres was patented. Absalom Gibson was the surveyor who made these locations, and James Williams was one of the chain carriers.

The evidence is sufficient to sustain the finding of the trial court that defendant Stephen Cleveland by tenants had held adverse possession of the land, cultivating, using, and enjoying same under his claim of title thereto, for more than ten years prior to the institution of this suit. The evidence also sustains the finding that, during five consecutive years of this adverse possession, said defendant paid the taxes on this land. The tax deed to Frank Cleveland before mentioned, which was duly recorded in Orange county on September 6, 1882, fully described the survey in controversy.

[1, 2] Appellant's first assignment of error is as follows:

"The evidence adduced upon the trial of this cause is insufficient to sustain the first finding

of fact made by the trial court, which was as follows: 'In this case plaintiff claims through mesne conveyances under Mrs. Fenley et al., as the heirs of the original grantee of the certificate by virtue of which the land herein sued for was located and patented; defendants, other than John H. Broocks, claim under Mrs. M. Pickering et al., as such heirs. On this question I find that those under whom plaintiff claims are not the heirs of the grantee of said certificate, and, on the other hand, those under whom said defendants claim are the heirs of said grantee, and defendants have acquired title to said land.' "

While the evidence before set out may have been sufficient to sustain a finding that the John Devenport under whom appellant claims was the original grantee of the certificate under which the land in controversy was located, it certainly does not compel such finding, and it cannot be held that the conclusion of the trial court that said Devenport was not the person to whom the certificate was issued is without any evidence to support it. We are inclined to agree with appellant in its contention that the evidence is insufficient to sustain the finding that the John Devenport whose heirs executed the deed to the Clevelands conveying to them this land was the John Devenport to whom the certificate was issued; but, in view of our conclusion that the finding of the trial court that the John Devenport under whom appellant claims was not the person to whom the certificate was issued is supported by the evidence, it is immaterial whether or not the John Devenport whose heirs executed the deed under which defendants claim was the grantee in said certificate. Appellant in this case could only recover upon the strength of its title, and defendants were not required to show title in themselves.

[3] We are, however, further of the opinion that the evidence justifies the conclusion of the trial judge that the grantee in said certificate, whoever he may have been, sold it to Frank Cleveland, the ancestor of defendant Stephen Cleveland, and that said certificate was owned and held by Frank Cleveland at the time it was located, and therefore the title to the land when located became vested in said Frank Cleveland. The evidence before set out shows that Frank Cleveland had the original certificate in his possession prior to its location; that he claimed the certificate as his own; that he located the land in controversy by virtue of the certificate; that he attended to obtaining the patent to the land; that the original patent issued by the state was delivered to him, he paying the patent fees therefor; that such original patent was in his possession at the time of his death, and continuously since has been in the possession of his heirs; that Cleveland and his heirs have continuously claimed the land since its location in September, 1881, down to the present date; that they have paid the taxes thereon continuously every year since the land was patented and became

subject to taxation; that as far back as 1891 they took actual possession of the land through a tenant; that they have had different tenants on different portions of the land continuously since the date mentioned.

We think this evidence was amply sufficient to show a transfer of the certificate to Frank Cleveland. Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1030; Lockridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96; Surghenor v. Ducey, 139 S. W. 22; Surghenor v. Ayers, 139 S. W. 28.

[4] It is well settled that an unlocated land certificate is a chattel and may be transferred by parol, and therefore the question of whether there was sufficient proof of the loss of a written transfer to admit proof of the contents thereof becomes unimportant. Jones v. Reuss, 5 Tex. Civ. App. 628, 24 S. W. 674. We are of opinion, however, that the proof of loss in this case was sufficient.

[5] Our fact conclusion that the evidence was sufficient to sustain the findings of the trial judge in favor of defendants upon their pleas of limitation of five and ten years disposes of appellant's assignments complaining of such findings on the ground that they are not supported by the evidence.

The evidence shows that defendants, other than defendant Broocks, were in possession of the land at the time Broocks executed his warranty of title to appellant's vendor, and that they have remained in possession since said time. The trial court correctly held that appellant's claim upon said warranty is barred by the statute of limitation.

This disposes of all the material questions raised by appellant's brief. We have considered each of the assignments presented, and none of them should, in our opinion, be sustained. It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.