CHARLES T. KOUNTZE ET AL V. GRACE W. SMITH ET AL.

No. 7507. Decided November 6, 1940.
Rehearing overruled December 18, 1940.
(144 S. W., 2d Series, 261.)

*Kenneth S. Finlayson,* of Omaha, Nebraska, *McCartney, Mc-Cartney & Johnson,* of Brownwood, and *Coke & Coke,* of Dallas, for plaintiffs in error.

The declaration of trust, from which the plaintiffs acquired their title, directing that the trustees sell the land and distribute the proceeds within a period of twenty years, would make plaintiff's interest one of personalty, and the failure of the trustees to make such sale, because of the existing economical depression, does not change her character of interest to one of realty, and being without title in the realty, it was error for the Court of Civil Appeals to hold that this suit for an interest in lands is maintainable. Cotton v. Coit, 88 Texas 414, 31 S. W. 1062; Hancock v. Butler, 21 Texas 804; Smith v. Drake, 94 S. W. (2d) 236.

*McClellan, Lincoln & Jones,* of Waco, and *Woodruff & Holloway,* of Brownwood, for defendants in error.

As the declaration of trust provided that the property should be sold within twenty-five years, the trust did not continue beyond that period of time, and the ownership of the property be-

came invested in the certificate holders, as tenants in common in proportion to their respective holdings, and the defendants having excluded the plaintiffs from possession, trespass to try title is the proper remedy for plaintiffs to secure that possession. Duncanson v. Howell, 222 S. W. 232; Allen v. Long, 80 Texas 261; 16 S. W. 43; Shell Pet. Corp. v. Grays, 131 Texas 515, 114 S. W. (2d) 869; Thompson v. Schmitt, 115 Texas 53, 274 S. W. 554.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the district court by defendant in error, Mrs. Grace W. Smith, joined by her husband, A. Foster Smith. They will be referred to herein as plaintiffs. The case took the form of an action in trespass to try title, plaintiffs claiming an undivided interest of 107/27000ths in about 21,000 acres of land. Charles T. Kountze and Denman Kountze were defendants, and will be so designated here. The trial court found that plaintiffs did not have such title in the lands as would sustain an action in trespass to try title, and rendered judgment that plaintiffs take nothing. The Court of Civil Appeals reversed the judgment of the district court and rendered judgment in favor of plaintiffs. 119 S. W. (2d) 721.

It is undisputed that prior to June 11, 1908, Charles T. Kountze and Luther L. Kountze were owners in fee simple of about 69,032 acres of land and 457 town lots situated in the State of Texas. Prior to that date plaintiffs had no title, either legal or equitable, in said lands and town lots, as will be hereinafter more fully shown. Whatever interest they possessed arose under a declaration of trust executed by Charles T. Kountze and Luther L. Kountze June 11, 1908, and by virtue of their ownership of certain certificates issued under that agreement. They claim that the trust agreement has terminated by reason of its own terms, and that by virtue of their ownership of the certificates they have become invested with an equitable title to an undivided interest in the lands, and hold same as tenants in common with the other owners of certificates.

The substance of all material provisions of the agreement of June 11, 1908, are set out in the opinion of the Court of Civil Appeals, and it is not necessary to reproduce them fully here. We will refer to some of the provisions which we think undoubtedly show that it was never the intention of the creators of the trust to invest the certificate holders with an equitable title to the properties in question.

■ Before doing so, however, it is appropriate to observe that the situation here is entirely different from the situation where there is an express separation of the legal and equitable titles, and the beneficiaries are expressly vested with an equitable title. It is also different from the situation where various owners of land vest the legal title in a trustee, to be administered according to the terms of a trust agreement for the benefit of the beneficial owner. The so-called "trust" in this instance is a contractual status, created by the owners of both the legal and equitable title, wherein they retain in themselves all title subject to a self-imposed obligation to administer the properties for the accomplishment of a specific purpose. The rights of certificate holders are created solely by the contract and certainly cannot arise higher than the terms which the creators of the trust have themselves prescribed.

With these preliminary remarks we notice some of the provisions of the trust agreement. Emphasis is supplied by us.

After a recital that the makers of the trust have acquired the lands in fee simple as joint tenants, with all the rights of such tenants at common law, there is the following recital:

"Whereas, the price paid by said Charles T. Kountze and Luther L. Kountze for the aforesaid property amounting in the aggregate to $534,000.00, has been *refunded* and *repaid* to them by the following persons, in the following proportions, to-wit:" (Then follows names of contributors and amounts paid by each.)

■ It is almost useless to observe that under our decisions no trust arises merely because of the refunding or repaying of a part of the purchase price after title has vested in the named grantee. Allen v. Allen, 101 Texas 362, 107 S. W. 528; Solether v. Trinity Fire Ins. Co., 124 Texas 363, 78 S. W. (2d) 180; Roach v. Grant, 130 S. W. (2d) 1019.

This, in the particular instance, is made perfectly clear by the succeeding language of the agreement as follows:

"Whereas, said Charles T. Kountze and Luther L. Kountze are about to make, execute and deliver to each of the parties aforesaid so refunding and repaying to them a portion of the purchase price so paid by them for said property, certificates evidencing the share of such party in the *rights and benefits created by and provided for in this Declaration of Trust,* such party being entitled to one share for each seventeen dollars and eighty cents so refunded and repaid as aforesaid to said Charles T. Kountze and Luther L. Kountze. The total number

of shares for which certificates are to be issued being thirty thousand. Said certificates to be in form or substantially in the form following, to-wit:" (Here is form of certificate.)

"Aforesaid certificates so to be issued as aforesaid and the *rights* and *benefits* acquired thereby *under this Declaration of Trust* shall constitute the *full and only consideration* for the several sums of money *so repaid and refunded* to the said Charles T. Kountze and Luther L. Kountze as aforesaid."

Next follows the declaration of trust upon which plaintiffs strongly relied, to-wit:

"Now, therefore, we the said Charles T. Kountze and Luther L. Kountze, for ourselves, our heirs and assigns, do by these presents, make known, admit and declare that all of the said property conveyed to us as aforesaid, by said Texas Land and Cattle Company, was conveyed to us and we now hold and shall and will continue to hold same and any and all income, revenue, and proceeds thereof, and every part thereof, upon the terms, trusts, and for the purposes following, that is to say:"

In the opinion of the Court of Civil Appeals will be found the substance of the succeeding provisions of the contract. It is wholly unnecessary to reproduce all of such provisions but it is important we think to give emphasis to certain portions of same. Section II of said instrument, among other things, provides as follows:

"The trustees shall have and exercise the management, control, and ownership, both legal and equitable, of said property conveyed, * *; but they shall account to the certificate holders for all of said property. And all other property which may become subject to the trust hereby created and for the proceeds thereof and the income and revenue therefrom arising. * * *

"They shall have all the powers in respect to said property of an absolute owner. Said powers shall include, among others, the full and unrestricted power of improving, leasing, incumbering, selling, granting, and conveying with or without covenants of warranty in their discretion, or otherwise disposing of the same or any part or parcel thereof or interest therein, in fee simple or otherwise. * * *"

Section 3 provides the following:
"The holders of said certificates shall be entitled to participate according to the number of their shares in the rights and benefits of the certificate holders under this instrument, and they shall be entitled to all the benefits of all the lands and other

property and the proceeds, revenue and income thereof, which are or become subject to the terms of this instrument. It is hereby expressly agreed that any holder or transferee of any such certificate by assignment or otherwise takes and holds the same subject to all the terms and provisions of this instrument. By an assignment and transfer of any such certificate the assignor ipso facto parts with all his rights in, to or under such certificate and under this instrument as against all other certificate holders and the trustees. It is also expressly agreed by and between the persons, firms and corporations who at any time may be the holders or owners of said certificates that the said *certificates* and the *rights* and *benefits* evidenced thereby are and shall be held and construed to be in all respects *personal property*, and shall in no wise pass to or vest in the heirs or devisees of any owner or holder thereof as *real estate.*"

The certificates held by Mrs. Smith passed to her by inheritance.

There are other provisions pertaining to the keeping of books and accounts by the trustees, the making of annual reports, compensation of trustees, and the removal and substitution of trustees. There is also a provision as follows:

"Any trustee resigning or removed as aforesaid, and the heirs, executors, devisees or other representatives of any deceased trustee, and the remaining trustee then acting, if there be one, shall make, execute and deliver such special warranty deeds or other instruments of conveyance, transfer or assignment as shall be necessary or proper to vest in the trustees for the time being jointly with survivorship as at common law the title to the lands and premises and other property subject to the trusts of this instrument."

Section X of the instrument is as follows:
"The trust hereby created shall be closed and wound up as quickly as the best interests of the certificate holders will permit, but in no event shall said trust exist or continue longer than twenty-five years from the date hereof."

Section XI is in part as follows:
"Inasmuch as during the continuance of the trust hereby created, it may happen by reason of events and circumstances not now foreseen that it may be for the best interest of all parties hereto to make some changes or modifications in the provisions of this instrument, it is hereby expressly agreed and provided that this instrument may at any time and from time

to time be changed or modified by a vote of the holders of not less than a majority in amount of the certificate outstanding at a meeting of the certificate holders called and held upon the notice and in the manner hereinbefore provided."

There is also a further provision to this effect:

"The certificate holders, at any meeting duly called for that purpose but not otherwise, shall have power to order and direct a sale or disposition of all the property held by the trustees under the trusts of this instrument and a winding up of the trust; provided that such order and direction must be authorized by vote of the holders of at least a majority in amount of the total certificates outstanding; and provided that such order and direction shall be reduced to writing and signed by the holders of at least a majority in amount of the total certificates outstanding; and provided further that no such order or direction shall be given unless the notice of the meeting shall expressly state the intention to take action in reference to such sale or disposition of the property and winding up of the trust."

The trial court, among other things, found as follows:

"From the creation of the trust until January 3, 1933, the trustees sold approximately 50,000 acres, leaving unsold approximately 21,000 acres. This unsold acreage comprised the cull remaining after the more marketable lands had been sold. In January, 1933, there was one well on the unsold land, which was then producing about 53 barrels of oil daily, and in addition there were three 'stripper' wells which were then producing collectively about 7 barrels of oil daily, making a total daily oil production in January, 1933, of around 60 barrels. The future oil possibilities on these unsold lands in January and on June 11, 1933, were unknown. I find that due to the then prevailing economic conditions that the trustees, after diligent efforts, were unable to sell the remaining 21,000 acres at a fair and reasonable price, by June 11, 1933. Certificate holders holding in excess of 19,000 shares protested any sales except for amounts which would represent fair and reasonable prices, which could not be obtained. The trustees also continuously endeavored up to and including the year 1933, to sell the surface of said lands, reserving the mineral rights, the values of which were then speculative and unknown, but due to the depressed economic conditions prevailing, such sales could not be consummated."

On June 11, 1933, holders of about two thirds of the certificates, pursuant to proper notice, voted to extend the trust with all of its terms, conditions and provisions, for an additional period of twenty-five years from and after that date.

It may be regarded as obvious that this action of trespass to try title cannot be maintained by plaintiffs except upon the theory that the trust created by the instrument of June 11, 1908, terminated at the end of twenty-five years from that date. Much of the briefs and arguments of counsel for plaintiffs is devoted to a discussion of the proposition that the trust did completely terminate at that time. While we entertain no doubt that the trust is still subsisting, however we are convinced that even if the trust created by the agreement were terminated, plaintiff still would have no *title*, legal or equitable, on which to maintain the present suit.

It is not made to appear with certainty that plaintiffs claim that the certificate holders under the agreement of June 11, 1908, were owners of any equitable *title* in the lands *prior* to that date. There is nothing upon which to base a conclusion that they possessed any such title, but on the contrary the written instruments expressly declare that Charles T. Kountze and Luther L. Kountze paid the purchase money and became the owners in fee simple of all these lands prior to the execution of the instrument of June 11, 1908. As pointed out above, the subsequent certificate holders could claim no resulting trust in the land by repaying or refunding a part of the purchase money. Besides, it is expressly declared that the "rights and benefits" acquired under the declaration of trust shall constitute the "full and only consideration" for the sums of money "so repaid and refunded." This completely negatives the idea that these persons were to have any title in the lands by reason of payments made by them, and the plaintiffs are forced to the contention that the "rights and benefits" acquired under the *declaration of trust* amounted to an equitable title to the lands, so that upon termination of the trust they possessed said equitable title freed from control and dominion of the trustees.

As the certificate holders had no title to the lands prior to the declaration of trust, we repeat that their rights and benefits could rise no higher than the rights and benefits conferred by the declaration of trust. Construing this agreement in all of its provisions, we are convinced that the only rights and benefits which it was intended the certificate holders were to receive were in the rents, revenues and income which might arise from the property, and the proceeds of same when finally sold. It was manifestly a scheme for the sale of all this property through

the instrumentality of trustees, with an accounting by the trustees of all income, rents, revenues and proceeds to the certificate holders proportionately.

The makers of the declaration were careful by apt language to reserve to the trustees both the legal and equitable title, and by equally apt language declared the interest of certificate holders to be personalty, and inheritable as such. It is the "income, revenue and proceeds" which they are to hold in trust. They are to keep books showing "all sales, leases and purchases made, their receipts and disbursements." In their discretion they may distribute pro rata any *moneys* in their hands belonging to the trust under the declaration whenever in their opinion such moneys are sufficient for that purpose. They are to make annual reports showing the "receipts and disbursements," and when such reports shall be approved by any certificate holder in writing, the same shall be considered "an accounting by the trustees to such certificate holder to the date of the report so approved, and acquiescence by such certificate holder in the acts and doings of the trustees to that date, and such certificate holder shall thereafter be forever debarred from asking for or compelling by suit or action in any court any further accounting from the trustees in respect to the trust to the date of the report so approved." It is expressly declared that "the certificate holders, at any meeting duly called for that purpose, but not otherwise, shall have power to order and direct a *sale* or *disposition* of all the property held by the trustees under the trust of this instrument and a winding up of the trust."

Paragraph X relied upon as showing termination of the agreement provides "the trust hereby created shall be closed and wound up as quickly as the best interests of the certificate holders will permit."

■ The provisions with reference to winding up the trust alone raise a clear implication that the dominant purpose of the agreement was the sale of all the properties, with distribution of the proceeds. See May v. Brewster, 187 Mass. 524, 73 N. E. 546; Williams v. Morris, 144 Oregon 631, 25 Pac. (2d) 135.

No provision for devolution of the title to land was made, but all parts of the agreement forcefully negative the thought that there was to be a residue of lands to be owned jointly by the various certificate holders. The declaration clearly contemplated a disposition of the whole estate in a manner conducive to the best interests of the certificate holder.

This being the correct construction of the declaration we think the authorities establish beyond question that the only "trust" created was one in personalty and not in the real estate itself. This being true, plaintiffs as certificate holders do not have and cannot have such title in the lands as will support an action in trespass to try title. As said by the Supreme Court of the United States in the case of Anderson v. Wilson, 289 U. S. 20-28, 77 Law Ed. 1004, in a situation which we think is analogous, what the certificate holders do have is a "right in equity to compel the performance of the trust." If the contract be subsisting, they have this right by virtue of its express terms, as well as in equity, if there be fraud or dereliction of duty on the part of the trustees, and defendants admit they still have this right, even if the trust be regarded as terminated.

■ The dominant purpose of the trust being the sale of all these properties and distribution of the proceeds, the trust necessarily remains active until that purpose be accomplished. No certificate holder can be allowed to destroy that purpose, for that would destroy the contract and establish one not contemplated by the trustors.

The conclusion thus reached is deducible from the following authorities: Smith v. Kinney's Executors, 33 Texas 283; Anderson v. Wilson, supra; Johnson v. Lee, 228 Ill. 167, 81 N. E. 834; Mallory v. Russell, 71 Ia. 63, 32 N. W. 102; Knight v. Gregory, 333 Ill. 643, 165 N. E. 208; Williams v. Morris, supra.

The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is reformed to such extent that plaintiffs will not hereafter be deprived of their equitable right to have the trust performed if and when it may be necessary and equitable to do so. The question of proper parties in such an action may then be settled. As thus reformed, the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court November 6, 1940.

Rehearing overruled December 18, 1940.