Malcolm DILLON, Virginia Cutter, R.K. Dillon and J.W. Achen, Plaintiffs-Appellants,

v.

Delmon HODGES and Connell Ashley, Defendants-Appellees.

No. 86–1429

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1986.

Lamar D. Treadwell, II, Muleshoe, Tex., for plaintiffs-appellants.

Shafer, Gilliland, Davis, McCollum & Ashley, Steve Hershberger, Perry Davis, Jr., Odessa, Tex., for defendants-appellees.

Before RUBIN, RANDALL and HIGGINBOTHAM, Circuit Judges.

RANDALL, Circuit Judge:

Malcolm Dillon, Virginia Cutter, R.K. Dillon, and J.W. Achen (hereinafter "plaintiffs" or "appellants") appeal the district court's entry of a take nothing judgment in their trespass to try title action against Delmon Hodges and Connell Ashley (hereinafter "defendants" or "appellees"). Because we agree with the district court that the appellants and the appellees own the property as tenants in common, we affirm.

I.

This action was tried to the district court on stipulated facts. The parties stipulated, and the district court found, that on January 9, 1909, the Texas General Land Office awarded a land certificate to W.W. Grooms for the 640 acres that are the subject of this action. The land certificate contained a legal description of the land that referenced a filed and recorded survey dated April 25, 1881, from the Pecos County surveyor to the Texas and St. Louis Railway Company.

The price of the land was $4.11 per acre. Annual interest of three percent upon all unpaid principal and $1/40$ of the original principal was to be paid to the State of Texas on or before each November 1 until the entire principal and interest was paid. In addition to the payment of the purchase price, other conditions for the issuance of a land patent included the payment of taxes on the property and the continued occupancy of the property.

A series of conveyances followed the issuance of the land certificate. On July 22, 1912, and on June 5, 1913, W.W. Grooms and his wife conveyed the land to R.C. Harris. On January 24, 1913, R.C. Harris and his wife conveyed the land to T.B. Bailey. On March 17, 1914, T.B. Bailey and his wife conveyed the land by special warranty deed to W.A. Marshall, subject to Marshall paying the remaining balance due on the property. On June 23, 1921, W.A. Marshall and his wife conveyed the property by general warranty deed to R.C. Dillon, Trustee. There was no written trust agreement, but the parties have stipulated that R.C. Dillon took whatever rights were acquired by the conveyance for six persons, each owning an undivided $1/6$ interest in any such rights. The six persons were: (1)

R.C. Dillon, et ux, Maurine Dillon; (2) Tom Dillon, et ux, Gladys Dillon; (3) R.F. Brown, et ux, Mabel Brown; (4) L.P. Schenck, et ux, Snow Schenck; (5) Nick Krannawitter, et ux, Hattie Krannawitter; and (6) J.B. Anderson (hereinafter "the beneficiaries").

On June 1, 1951, an instrument filed in the Pecos County deed records entitled "Notice of Termination of Trusteeship and Demand for an Accounting," and signed by N. Krannawitter, R.F. Brown, and Gladys Dillon, declared that R.C. Dillon's trusteeship was revoked for his failure to have ever made an accounting to the other beneficiaries of the trust. Tom Dillon, L.P. Schenck, and J.B. Anderson, the other beneficiaries of the alleged trust, died prior to the termination of the trust.

On October 15, 1958, the Pecos County surveyor conducted a survey and provided R.C. Dillon with the results. Sometime in October, 1958, R.C. Dillon made the final payment on the property. On November 20, 1958, the State of Texas granted a patent on the land to W.A. Marshall. Further conveyances followed.

On October 17, 1958, Hattie Krannawitter, Nick Krannawitter's widow, purported to convey by warranty deed the "whole S½ of said Section 28" to her son, Richard Krannawitter. On March 27, 1959, R.F. Brown and his wife conveyed by warranty deed all of their interest in the property to Richard Krannawitter. On June 4, 1959, Snow Schenck also conveyed by warranty deed all of her interest in the land to Richard Krannawitter.

On March 27, 1959, the heirs of J.B. Anderson purported to convey by warranty deed all of the property to Connell Ashley, one of the appellees. On October 21, 1965, Connell Ashley conveyed by warranty deed an undivided ¹⁄₁₂ interest in the property to Delmon Hodges, the other appellee in this case. On July 24, 1967, Richard Krannawitter and his wife quitclaimed all of their interest in the property to Hodges and Ashley.

R.C. Dillon died on January 4, 1966, leaving as his heirs Maurine Dillon and his children, Florence Dillon, Kenneth Dillon, Malcolm Dillon, Betty Jo Dillon, and Virginia Dillon. These persons or their successors in interest were the plaintiffs below and are the appellants before this court.

On August 6, 1985, the plaintiffs filed suit in federal district court seeking title to the property, actual and punitive damages, and to clear a cloud on their title to the property. In addition to appellants Hodges and Ashley, the plaintiffs named the Delhi Gas Pipeline Corporation as a defendant, but ultimately reached a settlement with that defendant. Federal jurisdiction was based upon diversity of citizenship.

At a bench trial on stipulated facts, the district court held that the property was owned by the plaintiffs and the defendants as tenants in common. Specifically, the district court held that the plaintiffs owned an undivided ⅙ interest, the defendants owned an undivided ⅔ interest, and Tom Dillon, et ux, Gladys Dillon owned an undivided ⅙ interest. The district court also held that, since possession of one cotenant is generally not adverse to the interests of other cotenants, the plaintiffs had not adversely possessed the land. Finally, the district court held that since the plaintiffs and the defendants were cotenants, there was no cloud on title to remove. On May 15, 1986, the district court entered a judgment that the plaintiffs take nothing from the defendants.

The plaintiffs appeal to this court, arguing that the district court misapplied Texas law in concluding that the parties were tenants in common, and erred in holding that there was no cloud on plaintiff's title. Specifically, the plaintiffs argue that title vested in R.C. Dillon alone when he had the land surveyed in 1958 and paid the purchase price for the patent that the state issued to W.A. Marshall. The plaintiffs argue that under Texas law the land certificate was personalty which conveyed no legal title to the land until the patent issued from the state. They also argue that the Texas property law doctrine of after-acquired title did not operate to vest title after the issuance of the patent because

the doctrine does not apply to inchoate rights in public lands and because the doctrine is inapplicable to conveyances involving quitclaim deeds. Hence, they argue, title vested in R.C. Dillon only, and any subsequent conveyances by the beneficiaries of the trust or their successors in interest actually conveyed nothing because there was no legal title to convey. The plaintiffs also argue that the trust gave the beneficiaries only an executory right to purchase the land and that this right terminated with either the repudiation of the trust, the death of the beneficiaries (all but one had died by the time the patent issued), or the abandonment of the beneficiaries' executory right to acquire the land by the failure of the beneficiaries to take further action to insure that the patent issued. Finally, plaintiffs argue that defendants do not have title to the land under any theory of constructive or resulting trust.

In response, defendants argue to this court that the district court correctly found the parties to be tenants in common. They argue that the land certificate, awarded to W.W. Grooms in 1909, operated to segregate the land involved in this suit from the public domain and was therefore a "located" land certificate, which, under Texas law, constitutes realty, not personalty. Defendants point to the stipulation of the parties that R.C. Dillon took whatever rights he acquired for the six beneficiaries under the alleged trust agreement, and argue that, upon the termination of the trust, the property automatically vested in the six beneficiaries with each acquiring an undivided ⅙ interest as tenants in common. The defendants also argue that R.C. Dillon's actions in 1958 of having the property resurveyed and paying the patent fee could not operate to divest the defendant's predecessors in title of their interest in the property, although the defendants concede that R.C. Dillon was entitled to a reimbursement claim against the other cotenants for their share of the payment. Finally, the defendants argue that, in any case, the evidence was insufficient to prove that R.C. Dillon was acting for his exclusive benefit in having the land resurveyed and causing

the patent to issue. The defendants also maintain that, given the above, the district court was correct in holding that there was no cloud on plaintiff's title.

As the above arguments indicate, the proper resolution of this case on appeal requires an application of the principles of Texas law involving land patents. Hence, before addressing the arguments of the parties, it is necessary that we undertake a survey of the applicable principles of Texas law.

## II.

The pivotal question in this appeal involves the legal nature of the land certificate issued to W.W. Grooms in 1909. Under Texas law, "[a] land certificate was merely the obligation of the government entitling the owner of it to secure a designated quantity of land by following the requirements of the law. It was the mere written evidence of a right in the owner to appropriate the land." 46 Tex.Jur.2d *Public Lands* § 73 at 590 (2d ed. 1963) (footnotes omitted). The certificate entitled the owner thereof to have a certain quantity of unappropriated land surveyed and to purchase this land from the state at a given price. The patent for the land was issued by the state upon the filing of the survey and the payment of the purchase price. "As a general rule, a land certificate was descendible, devisable, and alienable, passing from one person to another by inheritance, will, or deed." *Id.* § 78 at 594 (footnotes omitted). A land certificate was either "located" or "unlocated," depending upon whether land had been surveyed pursuant to it. Generally, "[a]n unlocated land certificate vests in its holder no justiciable interest in any specific land." *Sledge v. Humble Oil & Refining Co.*, 340 S.W.2d 517, 520 (Tex.Civ.App.—Beaumont 1960, no writ). An unlocated land certificate is personalty but, upon location, the certificate merges into the land and becomes realty. *Wantland v. Cowdin*, 87 S.W.2d 529, 532 (Tex.Civ.App.—Texarkana 1935, writ dism'd); *see also Houston Oil Co. v. Miller & Vidor Lumber Co.*, 178 S.W. 830, 833

(Tex.Civ.App.—Galveston 1915, no writ) (unlocated certificate a chattel). Location under a certificate also had legal consequences with respect to the transfer of the land:

A distinction was drawn between the transfer of the certificate before it was located, and a conveyance of the land itself after a certificate had been located. When the certificate had been located and surveyed, and there was a sale of the land by virtue thereof, the grantee acquired only an equitable title to the land. But the legal title to the land would vest in him immediately on the issuance of the patent, even though the land might have been patented to the original owner of the location. The legal title was said to inure to the benefit of the grantee, and would vest in him by estoppel. This was based on the principle that an after-acquired title of the grantor inures to the benefit of the grantee.

46 Tex.Jur.2d *Public Lands* § 81 at 597–98 (2d ed. 1963) (footnotes omitted). Hence, once land is surveyed and located under a certificate, it is segregated from the public domain and gives the owners of the land located under the certificate legal rights, including the right to bring an action in trespass to try title. *Atlantic Refining Co. v. Noel*, 443 S.W.2d 35, 38 (Tex.1968). Texas courts have held that as between competing claimants, priority of location, and not priority of patent determines who is the legal owner of the property. *Noel*, 443 S.W.2d at 39; *Abbott v. Gulf Prod. Co.*, 100 S.W.2d 722, 724 (Tex.Civ.App.— Beaumont 1936, writ dism'd); *see also Rudder v. Ponder*, 156 Tex. 185, 293 S.W.2d 736, 739 (1956). The owner of a located certificate does not lose his rights in the land because another person pays the purchase money for the land to the state and causes the patent to issue; the patent inures to the benefit of the true owner of the land. *Cf. Pridgen v. Giles*, 267 S.W.2d 187, 190 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.); *Davis v. Morley*, 169 S.W.2d 561, 565 (Tex.Civ.App.—Amarillo 1943, no writ); *Broussard v. Cruse*, 154

S.W. 347, 350 (Tex.Civ.App.—Galveston 1913, writ ref'd). Finally,

[w]hile a land certificate, owned by more than one person, may be separately located by each particular owner for his individual benefit, it may also be located for the joint benefit of all the owners, so as to make them own the land located as tenants in common.

In order to make a location inure to the separate benefit of one of the joint owners, so as to make him sole owner of the land located, the facts must show that, at the time of the location, it was intended to be for the benefit of some particular owner, and it must be designated with certainty which one it was, and the act of such location must be consistent with the rights of such owner in the certificate.

In the absence of evidence sufficient to identify any particular location of a certificate as being for the exclusive benefit of some particular joint owner, it must be treated as being made for the benefit of all, as tenants in common.

*Kirby v. Estell*, 78 Tex. 426, 431, 14 S.W. 695, 696 (1890). With the above principles in mind, we address appellants' arguments.

### III.

 Applying these principles to the facts of the instant case, it is clear that the judgment of the district court should be affirmed. Appellants argue that title to the land vested in R.C. Dillon alone when he paid the remaining balance due on the land and caused the patent to issue to W.A. Marshall. This contention is contrary to the Texas authorities that hold that priority of location, and not the issuance of a patent, is determinative of legal ownership of the land. *See Noel*, 443 S.W.2d at 39; *Abbott*, 100 S.W.2d at 724. In this case, the parties and their respective successors in interest were not dealing with an unlocated land certificate, but rather, the stipulations of the parties show that the certificate described the land in question at the time that it was awarded to W.W. Grooms in 1909. Hence, the location of the land under the certificate occurred prior to

Grooms' acquisition of the certificate, and this priority of location inured to the benefit of Grooms and his successors in interest. The resurvey of the land by R.C. Dillon in 1958, therefore, did not affect the ownership of the property. Furthermore, the fact that Dillon paid the remaining purchase price for the land and caused patent to issue does not affect the rights of the true owners of the land. *See Pridgen,* 267 S.W.2d at 190; *Davis,* 169 S.W.2d at 565; *Broussard,* 154 S.W. at 350. Having determined that the fact that R.C. Dillon subsequently caused the patent to issue in Marshall's name could not affect the beneficiaries' rights to the property, which were vested by priority of location, we now turn to a consideration of the type and quantum of interest in the property received by the beneficiaries.

As noted above, the land certificate was located by the time that W.W. Grooms received it in 1909. Hence, from that point on, under Texas law, the certificate merged into the land and took on the character of realty. All conveyances at issue in this case, therefore, were real estate transactions. For this reason, and contrary to the assertions of appellants, the critical conveyance which determines the rights of the parties in this case is the conveyance from W.A. Marshall to R.C. Dillon, who, according to the stipulations of the parties, took whatever rights that were conveyed for the benefit of the six beneficiaries. The rights that R.C. Dillon took for the beneficiaries were the rights under a located land certificate, i.e., equitable ownership of the land. Since the located certificate constitutes equitable title to realty, each beneficiary acquired an undivided ⅙ equitable interest in the property. *Wantland,* 87 S.W.2d at 532; *Houston Oil Co.,* 178 S.W. at 833. When the trust was revoked, a ⅙ equitable interest in the property vested in each of the beneficiaries as tenants in common. *See Gonzalez v. Gonzalez,* 469 S.W.2d 624, 631 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); *see also* Restatement (Second) of Trusts §§ 345 & Comment a, 347 (1959); *compare Kountze v. Smith,* 135 Tex. 543, 144 S.W.2d 261 (Tex.Comm'n App.1940, opinion adopted) (beneficiaries under business trust created to hold properties had no legal or equitable title to the properties when trustees reserved legal and equitable title prior to the creation of the trust), *rev'g,* 119 S.W.2d 721 (Tex.Civ. App.—Austin 1938). When the patent issued from the state to W.A. Marshall, legal title to the property inured to the benefit of the beneficiaries as tenants in common, as the true owners of the land. We therefore affirm the holding of the district court that the appellants and appellees are tenants in common, with the appellees owning an undivided ⅔ interest in the property, the appellants owning an undivided ⅙ interest, and an undivided ⅙ interest outstanding in Tom Dillon, et ux, Gladys Dillon, or their successors in interest.

### IV.

Our holding that the parties hold the property as tenants in common makes it unnecessary for us to address appellants' other arguments, but we will discuss them briefly for the sake of completeness. Appellants argue at length that no trust relationship existed between R.C. Dillon and the beneficiaries, and that therefore R.C. Dillon took legal title for himself alone. Even if we were to agree with appellants that no trust existed, a question which we do not reach, we fail to see how such a holding would benefit appellants, given appellants' stipulation that R.C. Dillon took whatever rights were acquired by the conveyance from W.A. Marshall for the six beneficiaries. A party is bound by his stipulations, and appellants cannot now be heard to claim that R.C. Dillon acted only for himself when he took the warranty deed for the property from W.A. Marshall in 1921. *See United States v. Alvarado Garcia,* 781 F.2d 422, 428 (5th Cir.1986); *see also United States v. McKinney,* 758 F.2d 1036, 1047 (5th Cir.1985); *Rice v. Glad Hands, Inc.,* 750 F.2d 434, 438 (5th Cir.1985). As noted above, the 1921 conveyance is the relevant conveyance for the purposes of this lawsuit; whether a trust

existed when the patent issued in 1958 is immaterial.

Appellants argued in their trial brief that R.C. Dillon adversely possessed the property, but since appellants have not argued this issue to this court on appeal, we do not address it. We note, however, that adverse possession by a cotenant against the interests of other cotenants is difficult to establish under Texas law, see, e.g., *Todd v. Bruner,* 365 S.W.2d 155 (Tex.1963); *Gibson v. Burkhart,* 650 S.W.2d 185, 188 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.); *Hernandez v. Hernandez,* 611 S.W.2d 732, 734 (Tex.Civ.App.—San Antonio 1981, no writ), and we would tend to agree with the district court's conclusion that there has been no adverse possession on the facts of this case.

Appellants argue that no constructive or resulting trust arose for the benefit of the beneficiaries of the alleged trust or the appellees, their successors in interest. Since appellees did not argue a theory of constructive or resulting trust, and since our decision is not based upon these equitable doctrines, we do not address these issues.

[redacted] Appellants also argue at various places in their brief that the appellees have failed to show good title in themselves. In making these statements, appellants misconceive the distribution of the burden of proof in this action. "As is customary in suits involving title to realty, we look to the substantive law of Texas for aid in resolving this dispute." *United States v. Denby,* 522 F.2d 1358, 1362 (5th Cir.1975). "Under Texas law, the plaintiff in a trespass to try title suit has the burden of proving good title in himself to the disputed land. He cannot prevail merely on the weakness of the defendant's title." *Chapman v. Moser,* 532 F.2d 426, 429 (5th Cir.1976). The burden, therefore, was on appellants to prove their title, and they cannot prevail merely because appellees have not established good title in themselves. Hence, we reject any assertions by appellants that appellees were required to prove their title.

Finally, appellants requested that the district court remove the cloud on their title caused by the conflicting claims of appellees. Because we hold that appellants and appellees are tenants in common, we must also hold that there is no cloud on title to remove.

V.

For the above reasons, the judgment of the district court is AFFIRMED.