BECHTEL ET AL., APPELLANTS, *v.* RORICK ET AL.,
APPELLEES.

(Decided June 5, 1939.)

*Messrs. Welles, Kelsey, Cobourn & Harrington,
Messrs. Wise, Shepard, Houghton & Lebell* and *Mr.
Earl F. Boxell,* for appellants.

*Messrs. Fraser, Effler, Shumaker & Winn* and *Mr.
Robert C. Dunn,* for appellees.

CARPENTER, J.  This appeal is on questions of law
and fact.  The suit is one in equity to require the de-
fendants, members of a bondholders' committee and

its depositary, to account for their stewardship, to turn over to an officer of the court the records of their proceedings and all of the bonds and coupons that have been deposited with them, and to account for their collections. The plaintiffs, who, represent a small minority of the owners of the bonds deposited with the committee, bring this as a class suit "on behalf of themselves and on behalf of all other holders of certificates of deposit" of bonds with the committee.

Prior to 1931 the Everglades Drainage District of Florida had outstanding over $9,000,000 worth of bonds. On January 1, 1931, it defaulted in payment of $100,000 of principal on the bonds and about $250,000 of interest that matured that day. These bonds having been very largely sold to the holders by the firm of Spitzer-Rorick & Company of Toledo, Ohio, the defendants, Horton C. Rorick and James R. Easton, members of that firm, and one Walter H. Lippincott, who has since died and has been succeeded by defendant Joseph R. Grundy, formed themselves into a bondholders' protective committee and prepared a deposit agreement, dated January 2, 1931, under which they invited all holders of those bonds to become parties to the agreement by depositing their bonds or interest coupons or both with the committee in its depositary, the defendant The Spitzer-Rorick Trust & Savings Bank of Toledo, Ohio, and receive from it certificates of deposit. Over $8,000,000 worth of the bonds and many coupons were so deposited. The objective of all parties was to secure payment of as much as possible of the bonds and interest. Very full powers were conferred upon the committee by the terms of the agreement.

Article IV, Section 1, provides that the agreement should continue for three years and then says:

"The said period of three years may be extended from time to time, for such further period or periods as the committee by resolution of all of its members,

shall fix, but in no event shall this agreement continue for a longer entire period than six years from the date hereof, and a copy of such resolution shall be filed with the depositary. Except as otherwise expressly provided herein, depositors shall not be entitled to receive back deposited bonds and coupons, or their proceeds or other property held for the account of such bonds and coupons, before the expiration of such period of three years and of any extension or extensions thereof.''

At the end of the three-year period the committee, by proper resolution, extended the term for another three years to January 2, 1937.

July 6, 1936, the committee by resolution sought to amend the deposit agreement by striking out the first sentence of that part above quoted and by substituting for it the following:

''The said period of three years may be extended from time to time for such further period or periods as the committee by resolution of all its members, shall fix, but this agreement shall not continue beyond January 2, 1943, without such extension being made by the depositors adopting an amendment to that effect in compliance with the requirements of this agreement. A copy of such resolution or resolutions shall be filed with the depositary.''

To each depositor the committee mailed a copy of this resolution with a letter which said the deposit agreement would ''terminate on January 2, 1937, unless renewed and extended before that date,'' and continuing, the letter said:

''No affirmative action by depositors is necessary to so extend the deposit agreement, as under the terms of the present agreement, this amendment will so extend said agreement and become binding and in full force on all depositors who shall not have notified the committee within thirty days from mailing this notice of amendment that such depositor desires to now with-

draw his bonds and/or coupons, according to the terms and conditions provided in the present deposit agreement."

The power of the committee to so amend the agreement and thereby extend its effective period is challenged by the plaintiffs and this challenge presents the first and major problem in this case.

1. The agreement contains several provisions respecting the power of the committee to amend it. Article II, Section 2 says:

"The committee shall have the power and is hereby authorized, without prejudice to or in limitation of the general powers and purposes hereof, * * * (j) to amend, modify, or change, at any time, the general purposes of this agreement, in the manner hereinafter provided."

Article V, Section 2, provides:

"The committee shall have power, whenever in its judgment it may be advisable, to amend this agreement. All amendments shall be lodged with the depositary; but, if in the judgment of the committee, which shall be conclusive and binding, any such amendment shall materially affect the rights of the depositors, notice of such lodging shall be given in the manner provided in Article III hereof, in the case of notice of adoption or approval of any plan and agreement. * * * Any depositor at any time within thirty days after the date of mailing of such notice, or of the final publication thereof, but in no event prior to such date, except as otherwise provided herein, may withdraw from this agreement in the manner and with the effect specified in Article III hereof with respect to withdrawals from this agreement in the case of the adoption of a plan and agreement. The depositor who shall not so withdraw, in the manner aforesaid, within such period of thirty days shall be conclusively and finally deemed, for all purposes, to have irrevocably waived the right to withdrawal given to them by the provision

of this article, and shall be irrevocably bound and concluded by all such amendments, whether or not they receive actual notice of such amendment or the lodging thereof.''

Article III gives the committee power to adopt a ''plan and agreement for the adjustment or liquidation and settlement'' of the depositors' claims, but if the plan ''involves a compromise, reduction or scaling down of the principal amount or the interest'' a copy of such plan shall be lodged with the depositary, and notice of the plan mailed to each depositor of record with the depositary, and any depositor may within thirty days of the mailing of such notice withdraw from the agreement and on surrender of his certificate of deposit and payment of his pro rata share of the expense of the committee to date, receive back his bonds and be relieved of the obligation of the agreement and cease to have any rights under it. Those who fail to so withdraw in thirty days, waive the right to do so and automatically accept the plan.

The plaintiffs urge that due to the positive language of Article IV, Section 1, quoted above, ''in no event shall this agreement continue for a longer entire period than six years from the date hereof,'' that provision is not subject to the amendment provisions and cannot be changed. Nowhere in the amendment provisions is there any exception of any part of the agreement. Construing all the terms of the agreement together and giving them all effect, is it not a more reasonable construction to interpret the language of Article IV, Section 1, as meaning ''this agreement'' in the form as it then existed and unamended? If the duration period is changed by an amendment adopted in the manner provided for in the agreement, then the instrument as so changed would determine its duration. As notice of such amendment had to be given the depositors and was given, and a reasonable way out was provided for them if any wished to take it, such arrangement

seems fair and in accord with the purposes of the whole scheme, and justified by the then existing situation as it will be hereinafter described.

Another section of the agreement supports this construction of the amendment provisions. Article VIII, "Miscellaneous," Section 1, says:

"No enumeration of any of the provisions of this agreement, or any special rights or powers or of any other matter or things, shall be construed to limit any grant of general rights or powers contained in this agreement or conferred upon this committee by any of the provisions hereof, nor shall the same be construed to limit any of the general provisions of this agreement."

But assuming the amendment extending the time of operation of the agreement did not come within the terms of the amendment provision, it is helpful to reflect how the depositors came into relationship with the committee. None of them signed the agreement. Merely by depositing their bonds with the depositary and accepting the certificates of deposit, the relationship arose. By so doing, they accepted the offer of the committee and thereby became parties. This is clearly expressed in the certificates of deposit they received, which say:

"The holder thereof, by receiving the certificate, assents to and is bound by all of the provisions of said deposit agreement, and is entitled to receive all of the benefits to which the depositor of such bonds is or may become entitled under the provisions of said deposit agreement."

When the proposal to extend the time of operation of the agreement was tendered to the depositors, they were advised how they could withdraw if they chose to do so, and they were also advised that by failing to do so the committee would assume they desired to continue to avail of its efforts in their behalf. If the original agreement was not amended, in effect, an

entirely new one was thus made exactly like the existing one except that it would continue to January 2, 1943.

The plaintiffs contend that they did not have copies of the agreement, hence did not know its terms and could not seasonably protect themselves by withdrawing from the agreement when the time was given them to do so. Their certificates of deposit told them where they could obtain a copy of the agreement, or at least ask for one, had they desired it. The certificates recite:

"For the information of the depositors, a copy of the said agreement of deposit is lodged with the undersigned depositary, The Spitzer-Rorick Trust & Savings Bank of Toledo, Ohio."

All of the plaintiffs that testified herein said they did not ask the depositary or the committee for a copy, nor does it appear that a copy was ever refused any depositor who asked for one. In view of this situation, it does not seem that any fraud or deceit was perpetrated on plaintiffs or any other depositors so far as shown by the evidence before the court.

From all of the considerations, the court's conclusion is that the amendment was effective as such, or as a new contract—in legal effect it makes no difference which—and the plaintiffs are bound by it.

2. Assuming that the attempted amendment was not effective to extend the operation of the agreement beyond January 2, 1937, can the plaintiffs as a class maintain this suit, and are they entitled to the class relief they seek herein?

None of the plaintiffs has asked, either under the amendment and the notice to them which accompanied it, or under the terms of the original agreement or on their claim that the agreement has expired, to have his bonds returned to him, and in this action they are not asking that to be done. What they do ask is that the court enjoin the committee from acting further,

not only for them, who represent a very small per cent of all the depositors, but for all the other depositors who, so far as this record shows, are content and desire the continued services of the committee.

They are asking the court to require that all deposited bonds and coupons, and all the records and property of the committee, be turned over to "some person or institution qualified to handle the matter * * * and that the same be held by such person or institution pending further order herein." They recognize that the situation is still such that the interests of the bondholders can only be served by concerted action, "collective bargaining," as it were. To state it figuratively, but in a forceful way, it appears from the record that the Everglades Drainage District is a lemon for the bondholders, and the question is: Who is to squeeze it to get for them the available juice to apply on their bonds?

Again looking to the terms of the agreement, the first paragraph after the "whereases" is as follows:

"Now, therefore, in consideration of the premises, and of the advantages which will accrue to the depositors from union of interest and united action, and of the mutual provisions and stipulations herein contained, and of other good and valuable considerations, the *depositors, each for himself, but not for the others, or any of them, agree with the committee as from time to time constituted, and with each other, as follows* * * *." (Italics ours.)

Here follow the various articles of the agreement.

From the part italicized for the purpose of this opinion, it appears that the agreement, when it expressly says "each for himself * * * agree with the committee," makes the contract of each depositor with the committee an individual matter, and that there may be no doubt about it, the alternative is emphatically stated, "but not for the others, or any of them."

With this clear definition of individual relationship

to the committee, each depositor can only speak and sue for himself. He cannot avail himself of Section 11257, General Code, by claiming that he and a small minority joining with him have a "common or general interest" with the many other depositors, and require the court to act for such depositor in respects concerning which nothing in the record shows they are desirous of or would profit by.

3. This suit being one in chancery, to secure an injunction, a receiver and an accounting, equitable principles must control it, and it is helpful to examine the evidence and see what the situation is and what the committee has done and what remains to be done by it or some other committee or collective authority.

Since 1931 when the full force of the present depression came upon the great development enterprises of Florida, of which the drainage of the Everglades was one of the largest, the officers of that district and the state of Florida, acting through its Legislature and various administrative officers, have sought by legislation, inaction and every possible aggressive interference to invalidate and even repudiate the bonds of the district. By various proceedings in federal courts, the committee has so far successfully opposed these efforts and has established the bonds as valid obligations of the district.

With validity judicially established, the committee has had to resort to numerous mandamus actions in the courts to compel taxing officers to make the required tax levies to raise money to pay upon these legal obligations of the district. In all, nearly thirty lawsuits of one kind and another have been prosecuted by the committee in the past eight years, and the end is not yet in sight, for every possible hindrance is still being placed by the officers of the district, with the cooperation of the state of Florida, in the way of the collection of necessary taxes to pay these bonds. Unless some compromise or adjustment of the matter,

which the committee seeks, is worked out, further litigation will be necessary. The plaintiffs seek "to trade horses in the middle of the stream."

In view of all of these considerations, the conclusion of the court is that neither law nor equity supports the claims of the petition and it is dismissed at the costs of the plaintiffs.

Having reached these conclusions and especially that these plaintiffs cannot maintain this cause as a class suit, the motion of William C. Weber, another depositor, to become a party plaintiff and file an intervening petition, which asks only the same relief as that asked by the plaintiffs, is overruled.

*Petition dismissed.*

OVERMYER, J., concurs.

LLOYD, J., concurring. The words "but in no event shall this agreement continue for a longer entire period than six years from the date hereof" are so definite **and explicit a limitation** as to time as to obviate any other construction than that they were intended, as in fact they do, to exclude any attempted extension of the contract beyond the time so fixed, and to apply to the deposit contract in its entirety. There is nothing uncertain or equivocal in their meaning or purpose; but the depositing bondholders who expressly agreed to the extension of time beyond the date of expiration fixed in the deposit agreement would be bound thereby because as to them it thereby became a new agreement. As to the others not in accord therewith, among whom are plaintiffs, their remedy is to demand the return of their bonds and to proceed with respect thereto on that basis.

Therefore, and for the reasons so well stated by Judge Carpenter, the plaintiffs cannot prosecute a class action as they here seek to do. Furthermore, he who seeks equity must do equity. All of the holders of certificates of deposit for their bonds, advised as

they were, and knowing of the adoption by the committee of the resolution of attempted extension of the operative time of the deposit agreement and of its purpose and stated necessity, by permitting the committee to proceed in establishing the validity of the bonds, thereby obtaining and receiving the benefit thereof, can not now in equity complain of what has thus been done.

For these reasons, the relief sought by them should be denied, and I therefore concur in the judgment.