(No. 28088.— )

ISADORE GUMBINER, Appellant, vs. ALDEN INN, INC., et al., Appellees.

*Opinion filed January 17, 1945—Rehearing denied March 15, 1945.*

MAURICE L. DAVIS, of Chicago, for appellant.

MYER N. ROSENGARD, and WEST, LEATON & WEST, both of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Isadore Gumbiner, filed an amended and supplemental complaint in the circuit court of Cook county seeking to have declared invalid, and an injunction issued restraining consummation of, a written agreement entered into December 29, 1943, between defendants, Alden Inn,

Inc., as seller, and Lake Shore Hotel Company, as purchaser, involving the sale of a parcel of real estate in Chicago, improved with a building used for hotel purposes, together with furnishings, constituting the sole assets of the seller corporation. By its counterclaim, defendant Lake Shore Hotel Company asked specific performance of the agreement. A hearing before the chancellor resulted in a decree (1) dismissing plaintiff's complaint for the want of equity and (2) granting specific performance of the contract, as sought by the counterclaim. Plaintiff prosecutes a direct appeal, a freehold being necessarily involved.

The facts are not in dispute. Alden Inn, Inc., is a Delaware corporation. Of a total of 2745 shares issued by it, 1843 were controlled by a stock trust agreement dated April 1, 1937. James C. Leaton, Marshall Keig and Owen A. West were the trustees under this agreement. These three, together with H. Burton Schatz, constituted the four directors of the corporation. According to the bylaws of Alden Inn, Inc., a vote of three of the directors was sufficient to bind the directorate. The minority shareholders were plaintiff, who owned 390 shares, Schatz, 205 shares, and owners not specified, 307 shares. Owen A. West was president of the corporation. By the terms of the agreement of December 29, 1943, defendant Lake Shore Hotel Company, present occupant of the premises under a written lease dated July 29, 1940, agreed to purchase the building and furnishings at $95,000 net. In addition to being signed by West, as president of Alden Inn, Inc., the agreement also bore the signatures of Keig, Leaton and West, not individually but as trustees under the stock trust agreement. The agreement of December 29, 1943, provided for the sale of the property at the named amount, subject to approval (a) by the board of directors and shareholders of Alden Inn, Inc., at meetings to be called for this purpose, and (b) by the holders of stock trust certificates for shares of capital stock of Alden Inn, Inc. According to

its terms, if holders of stock trust certificates representing one third or more of the shares held by the trustees dissented from the proposed sale, the stock trustees could not vote in favor of a sale. The agreement also contained a provision that if, within the twenty-day period following its submission to the holders of stock trust certificates, higher *bona fide* offers were received by the seller, the purchaser had until 5:00 o'clock P. M. of the day following the expiration of the twenty-day period to agree in writing to meet any higher offer. Upon failure of the purchaser so to do, the seller was accorded the right to accept the highest offer received, and, upon the execution of a new contract, the present agreement should become of no force and effect. If no higher offers were received during the twenty-day period, and holders of less than one third of the shares represented by trust certificates dissented from the proposed sale, then the stock trustees were directed to vote their approval of the sale contemplated by the agreement at a meeting of shareholders to be convened for this purpose. A higher *bona fide* offer is defined as one which would yield the seller at least one thousand dollars in excess of the offer of the Lake Shore Hotel Company. Upon failure or inability of the seller corporation to perform the terms, conditions and provisions of the contract, it was provided that the earnest money should be refunded, and that the agreement should thereupon become null and void, without any liability on the part of the seller.

On January 13, 1944, the stock trustees mailed to the beneficiaries of the trust a notice relating to the intended sale. This notice recited the execution of the agreement and stated that if offers were received from other prospective buyers prior to February 4, 1944, to net $96,000 or more, (after making allowance of $4444.23, to which Lake Shore Hotel Company would be entitled, upon sale of the property, for cancellation of the existing lease according to its provisions,) the seller would have a right to accept

the highest offer, unless Lake Shore Hotel Company agreed to meet the higher proposal. The stock trustees announced that their vote would be favorable to the intended sale unless the holders of at least one third of the shares held in the stock trust voted against the sale prior to February 4, 1944. The undisputed evidence discloses that the holders of certificates for only seventy shares out of the 1843 voted against the sale.

January 18, 1944, a directors' meeting was held, the minutes disclosing that Owen A. West, president of Alden Inn, Inc., declared he had executed the contract upon terms more favorable than those received from any other prospective purchaser, and that the contract would not become effective except upon approval by the directors and shareholders of the corporation. A resolution was then adopted by the directors, recommending the sale to Lake Shore Hotel Company at the price specified, and ordering that the question of the proposed sale be submitted to a vote of shareholders at a special meeting, to be held on February 7, 1944, at 11:00 o'clock A. M. January 20, 1944, a notice was mailed to the shareholders of Alden Inn, Inc., calling a special meeting, to be held on the day and at the time last named, to consider and vote upon the recommendation of the board of directors of the corporation.

February 5, 1944, William H. Seide submitted to West, president of Alden Inn, Inc., an offer in writing to purchase the corporate property for $101,000. A deposit of $5000 as earnest money was made. The offer of $101,000, after deducting an allowance for cancellation of the leasehold, would have yielded $1555.68 more to Alden Inn, Inc., than the offer of $95,000 made by the Lake Shore Hotel Company.

February 7, 1944, at 11:00 o'clock A. M., pursuant to notice, a meeting of shareholders of Alden Inn, Inc., was convened for the purpose of considering the matter of the sale of the corporate property. Present were the three

stock trustees, H. Burton Schatz, and plaintiff, Isadore Gumbiner, appearing by J. W. Neal as his proxy. The minutes of the meeting disclose that the offer of $101,000, made by Seide, was discussed; that the stock trustees and Schatz considered that the corporation was bound to adhere to the terms of the contract of sale entered into December 29, 1943, and that they concluded the offer of Seide was received too late to be considered. A resolution was adopted, dissented to only by J. W. Neal, as proxy for plaintiff, providing for rejection of the offer and approving the form of letter of transmittal returning the deposit made by Seide. The minutes of this meeting further disclose that a motion was made for the approval of the contract of sale of December 29, 1943. Neal, as proxy for plaintiff, moved that the motion be amended by substituting Seide's offer of February 5, 1944. This motion failed for want of a second. On vote taken upon the pending motion to approve the contract of sale of December 29, 1943, a resolution was adopted approving the contract of sale. The only dissent registered was that of Neal, as proxy for plaintiff, who cast 390 votes against the resolution.

Immediately upon adjournment of the shareholders' meeting, a directors' meeting was called, attended by three of the four directors of Alden Inn, Inc. Schatz was absent. At this meeting, the directors present unanimously approved the sale of the corporate property, pursuant to the agreement of December 29, 1943. They likewise approved the acts of the officers and directors of the corporation, rejecting the offer tendered by Seide. Following the directors' meeting, the corporation, on February 7, 1944, acting through its secretary, Leaton, mailed a written notice to Lake Shore Hotel Company, advising that the contract of sale of December 29, 1943, had been approved, and that the officers of the corporation had been authorized and directed to consummate the sale. On the same after-

noon, following the directors' meeting, the stock trustees and Alden Inn, Inc., mailed a letter of rejection to Seide, reciting that under the contract of sale theretofore made, higher offers could be received only until February 2, or, at the latest, February 3, 1944, and that, since his offer was not received within the prescribed time, the corporation, of necessity, refused to accept or consider it.

The evidence further discloses that, although the original complaint in the present action was filed at 10:26 o'clock A. M., February 7, 1944, thirty-four minutes before the time set for the shareholders' meeting, no mention of it was made by J. W. Neal, plaintiff's proxy, who, himself, actually filed the complaint. Seide had been informed by plaintiff, on February 1, 1944, of the availability for purchase of the property in controversy. Seide testified that he knew, on February 2, of the agreement between Lake Shore Hotel Company and Alden Inn, Inc., of the twenty-day limitation, and, also, of the right of the named purchaser to meet any higher bid. He stated, however, that the attorney for plaintiff had informed him he might disregard the time limitation.

To reverse the decree, plaintiff first assails the covenant of the stock trustees, as holders of a majority of the shares of stock, to not accept bids unless received within the twenty-day period, and affording the Lake Shore Hotel Company the right to meet any higher bids made within this period. Plaintiff argues that these trustees, constituting three of the four directors of the corporation, owed the utmost fidelity toward all the shareholders, and that it was a breach of their duty, as directors, to place themselves in a position where their interests, as stock trustees, would prevent them, as directors, from acting for the best interests of all of the shareholders. The owners of corporate shares may create a trust therein for any purpose they deem desirable, so long as the purpose is not prohibited by statute or some rule of public policy. No stat-

ute in Illinois prohibits a trust of the shares of a corporation for the purpose of controlling its management, and no rule of public policy forbids the combination of the owners of a majority of the shares for the purpose of controlling the corporation. In short, the purpose for which a voting trust is created determines its legality. (*Venner* v. *Chicago City Railway Co.* 258 Ill. 523.) Plaintiff makes no charge that the voting trust was created for an illegal purpose. Nor does he assert that either the directors or the stock trustees acted fraudulently in any respect. Rejection of Seide's bid, which would have netted the corporation $1500 more than the price specified in the written contract, it is contended, however, demonstrates the alleged breach of faith on the part of the trustees who were also directors. *Dixmoor Golf Club, Inc.* v. *Evans,* 325 Ill. 612, cited in support of this contention, is inapplicable. There, directors of a corporation, having a personal option to buy property at a certain amount, exercised the option after being authorized to buy the property for the corporation, and then proceeded to purchase it from themselves for the corporation at a much higher figure. No comparable situation is presented by this record. Here, the evidence discloses that, prior to December 29, 1943, the board of directors and stock trustees had determined it was for the best interest of all the shareholders to sell the property. Consistent with this desire, a large number of real estate brokers and prospective purchasers were solicited. The best prior offer received was one, submitted by counsel for plaintiff on behalf of others, for $5000 less than the figure named in the Lake Shore Hotel Company contract. There is no suggestion of any personal benefit to the stock trustees, either as such or as directors. The present contract, executed by the officers of Alden Inn, Inc., as well as the stock trustees, specifically provided it was to be of no binding effect, either upon the corporation itself or the stock trustees, unless and until

their action and the agreement were approved by the board of directors and the holders of beneficial interests under the trust agreement. The chancellor found that the officers and directors of Alden Inn, Inc., and the trustees under the stock trust agreement dated April 1, 1937, acted according to law and in good faith in entering into the contract of December 29, 1943, limiting the time within which other bids could be received, and permitting Lake Shore Hotel Company, the original bidder, to meet any higher bid; that although Seide knew of the twenty-day limitation before its expiration he knowingly and intentionally delivered his bid after expiration of twenty days, and that the shareholders, officers and directors of Alden Inn, Inc., and the stock trustees, properly rejected the offer of Seide. Based upon these findings, the court dismissed plaintiff's complaint for the want of equity. The court further adjudged that the defendant, Alden Inn, Inc., and its officers and directors, perform the contract entered into December 29, 1943, in the manner provided for under its covenants and conditions, and directed that Alden Inn, Inc., and its proper officers execute and deliver a deed to the real estate and a bill of sale to the personal property in the manner and upon the terms set forth in the contract. The decree and the findings supporting it are wholly in accord with the evidence.

It is conceded that the twenty-day limitation may have bound the stock trustees, but it is further contended that, under the form of contract employed, Alden Inn, Inc., could have refused to perform the contract of December 29, 1943, and acted upon a higher offer received at any time before actual consummation of the contract, without incurring any liability. Upon the factual situation presented, approval or rejection of the agreement was purely a matter within the discretion of the shareholders and directors of the corporation. Although not binding upon the corporation at any time prior to February 7, 1944, upon

ratification of the contract by its shareholders and directors at the meetings then held, the ratification and approval bound both parties—seller and purchaser alike—and the agreement became a binding contract as of the date of its execution. (*Rosehill Cemetery Co.* v. *Dempster,* 223 Ill. 567.) In view of the court's finding in its decree that Seide had deliberately failed to submit his bid until after the expiration of the twenty-day limitation period, it can not be said that, under all the circumstances, the court committed error in not setting aside the action of the corporation, taken by its shareholders and directors after a full disclosure and discussion at meetings regularly called for the purpose.

It is agreed between the parties that Alden Inn, Inc., being a corporation organized under the laws of Delaware, the laws of that State govern. Decisions of the Delaware courts, cited by both parties, are, however, completely in harmony with our conclusion. This being so, specific reference to these authorities becomes unnecessary.

The decree of the circuit court is affirmed.

*Decree affirmed.*