Benjamin Morris, Appellant, v. The Broadview, Inc., et al., Appellees.

Gen. No. 43,585.

Opinion filed March 11, 1946. Rehearing denied March 25, 1946. Released for publication March 25, 1946.

DAVID I. SPARK, of Chicago, for appellant.

McINERNEY, EPSTEIN & ARVEY, of Chicago, for certain appellees.

H. J. ROSENBERG, of Chicago, for certain other appellee.

HAROLD L. REEVE, ELMER LEESMAN and GEORGE E. HARBERT, all of Chicago, for certain appellee; LOUIS M. MANTYNBAND, SIDNEY R. ZATZ, and MELVIN A. GARRETSON, all of Chicago, of counsel for all appellees.

Mr. Justice Niemeyer delivered the opinion of the court.

Plaintiff filed a complaint asking for an adjudication that the trust described therein had terminated pursuant to its terms, and for other relief resulting from or incidental to such termination. The defendants filed their respective motions to strike the complaint and dismiss the suit. These motions were sustained by the court, the complaint was stricken and the suit dismissed. Plaintiff appeals.

The principal grounds relied upon by plaintiff for reversal of the decree are (1) That the trust in question had terminated pursuant to its terms and the attempts at extending the same were ineffective; and (2) That the provision in the trust agreement in question, giving the trustees the right to own and deal in participation certificates in the trust, is against public policy and therefore invalid.

The facts well pleaded in the complaint must be taken as true on this appeal. The defendant, The Broadview, Inc., is an Illinois corporation formed pursuant to a plan of reorganization approved by the Federal district court of the northern district of Illinois, eastern division, for corporate reorganization of the Broadview Building Corporation under section 77B of the Bankruptcy Act. Under the plan of reorganization 7,240 shares of The Broadview, Inc., par value $1.00, were issued to the three trustees, defendants herein, as voting trustees. Participation certificates in the voting trust were issued by the trustees to persons who were ultimately to be entitled to shares of stock in the corporation, each share of stock being represented by a participation unit in the voting trust. Plaintiff held 227 units of interest in the trust. The trust agreement approved by the court provided (sec. 1 of art. 8) that unless sooner terminated as therein provided, the trust agreement should terminate on the 14th day of July 1939; that it might be terminated at any time by

the unanimous vote of the trustees, such termination to become effective on written notice of such termination and of the date thereof to the registered holders of participation certificates, and that the trustees should terminate the trust agreement if at any time the then holders of record of participation certificates evidencing at least 66 2/3 per cent of the then outstanding trust units should so request. Section 2 of article 8 provides, ''Within thirty (30) days after the termination of the Trust Agreement the Trustees shall deliver or cause to be delivered to the holders of record of Participation Certificates the number of shares of Capital Stock specified therein'' upon the surrender of the participation certificates properly indorsed. Section 4 of article 9 provides, ''This Trust Agreement may be amended, altered or modified by the resolution of all the Trustees; provided that the Trustees shall notify the registered holders of all Participation Certificates, at the addresses shown on the transfer books of the Agent of the Trustees, of the nature of such amendment, alteration or modification, not less than ten days prior to the date on which it is proposed that such amendment, modification or alteration shall become effective; and such amendment, alteration or modification shall not become effective if at or prior to such date the holders of Participation Certificates representing 33 1/3 per cent or more of the then outstanding units in the trust shall in writing advise the Trustees of their objection to and dissent therefrom.'' Complying with the foregoing provision, the trustees amended section 1 of article 8 by striking therefrom the figures 1939 and substituting in lieu thereof figures 1944, such amendment to be effective as of November 5, 1938. Less than 33⅓ per cent of the owners of the then outstanding units in the trust advised the trustees in writing of their objection to and dissent from the proposed amendment, and it was declared effective. By similar action the same section was later amended by

striking therefrom figures 1944 and substituting in lieu thereof figures 1947, such amendment being declared effective as of February 8, 1944. Prior to the first amendment plaintiff was the owner of 65 trust units. Thereafter, between December 1, 1938 and March 15, 1943 he acquired 162 additional units. The complaint is silent as to whether plaintiff protested either of the amendments when notified, as provided by the trust agreement. He filed his complaint August 8, 1944.

Defendants contend that each amendment was properly made and became effective; that plaintiff and other holders of trust units, by acquiescing in the amendments, have placed upon the trust agreement a practical construction empowering the trustees to so extend the life of the trust agreement. Each of the parties quote definitions of the terms "amend," "alter" and "modify" to support their respective positions. These words are in general use and their meaning is not uncertain. Each means, to change. There is nothing in the trust agreement restricting or limiting the application of the words. The language "This Trust Agreement may be amended, altered or modified," is all-inclusive and extends to each and every provision of the trust agreement. Had it been the intention of the parties to the reorganization proceeding, or the district court, to restrict or limit the particulars in which the trust agreement could be so amended, altered or modified, such intent could have been easily and clearly manifested. Extension of the existence or life of a corporation is construed as an amendment of its charter. *Chicago, B. & Q. R. Co. v. Doyle,* 258 Ill. 624, 634; *Drew v. Beckwith, Quinn & Co.,* 57 Wyo. 140, 114 P. (2d) 98; *Ovid Elevator Co. v. Secretary of State,* 90 Mich. 466; *Keetch v. Cordner,* 90 Utah 423, 62 P. (2d) 273. Under section 52 of the present Illinois Business Corporation Act, adopted in 1933, among the powers of amendment of articles of incorporation enumerated without limitation upon the general power

of amendment, is an amendment to change the period of duration of a corporation. Similarly under the General Corporation Act of 1919 (sec. 59) it was provided that the articles of incorporation might be amended, among other ways, ''by extending the period of its corporate existence.'' It is true, as contended by plaintiff, that courts of equity will not permit trustees to extend without authority the life of a trust. But neither reason nor authority has been advanced for denying the right of persons free to contract to grant to trustees the power to extend the trust in whatever manner and upon whatever conditions the creators of the trust may designate. In *Schumann-Heink v. Folsom,* 328 Ill. 321, 326, the court said: ''It may be stated as a general proposition that anyone competent to contract may make such disposition of the legal title to his property as he pleases, may annex such conditions and limitations to its enjoyment as he chooses, and may vest it in trustees for the purpose of carrying out his intention. He has the same power to create trusts as he has to alienate the legal title to his property. (1 Perry on Trusts, 5th ed. sec. 28.)'' Provisions for the extension of voting trusts in reorganization or liquidation proceedings such as is involved here have been upheld in *Bechtel v. Rorick,* 65 Ohio App. 455, 30 N. E. (2d) 451; *Kountze v. Smith,* 135 Tex. 143, 144 S. W. (2d) 261. In the present case the provision for amendment was incorporated with the approval of the Federal court. Furthermore, plaintiff acquiesced for more than five years in the action of the trustees in amending the trust agreement by extending the life of the trust. He did not protest or object to either extension amendment, and so far as shown by the record no question of the trustees' right to so amend the trust agreement was raised by any party in interest prior to the filing of the present suit. This is a practical construction of the agreement vesting such power in the trustees, which will be regarded by the courts in inter-

preting a contract. *Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 91; *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 107; *Schneider v. Neubert*, 308 Ill. 40, 43; *Whalen v. Stephens*, 193 Ill. 121, 135.

Plaintiff's second contention is that the provision in the trust agreement giving the trustees the right to own and deal in participation certificates in the trust, is against public policy and therefore invalid. This provision, found in section 3, article 7, provides: "Any of the Trustees or any corporation or firm in which they or any of them may be interested as officers, shareholders, members or otherwise, may be the owners of Participation Certificates and may purchase, hold, sell, or deal in the same and may vote and exercise all rights with respect thereto . . ." In support of his contention plaintiff cites a number of cases holding, in the absence of authority granted in the trust agreement, that a trustee is not permitted to deal in the subject matter of the trust. This rule is generally acknowledged. However, the right of trustees to deal with the subject matter of the trust when the creators of the trust authorize them to do so is as generally recognized. Restatement of the Law of Trusts, sec. 170 (s); *Welch v. Welch*, 235 Wis. 282, 335; *Newton v. Old-Merchants Nat. Bank & Trust Co.*, 299 Mich. 499; *Tuttle v. Gilmore*, 36 N. J. Eq. 617; Scott on Trusts, sec. 170.9. In considering the question of public policy the Supreme Court said in *Schumann-Heink v. Folsom*, 328 Ill. 321, 330–331: "In considering whether any contract is against public policy it should be remembered that it is to the interests of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts. Agreements are not held to be void, as being contrary to public policy, unless they be clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they be

manifestly injurious to the public welfare. Courts must act with care in extending those rules which say that a given contract is void because against public policy, since if there be one thing more than any other which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contract, and that their contracts, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by the courts. *Steen v. Modern Woodmen*, 296 Ill. 104.'' That the exercise of the right provided for may result in one or more of the trustees obtaining a majority of the stock, and therefore controlling the operation of the trust, is no valid objection to such an agreement. As said in *Gumbiner v. Alden Inn, Inc.*, 389 Ill. 273, 278–279: ''The owners of corporate shares may create a trust therein for any purpose they deem desirable, so long as the purpose is not prohibited by statute or some rule of public policy. No statute in Illinois prohibits a trust of the shares of a corporation for the purpose of controlling its management, and no rule of public policy forbids the combination of the owners of a majority of the shares for the purpose of controlling the corporation. In short, the purpose for which a voting trust is created determines its legality. (*Venner v. Chicago City Railway Co.*, 258 Ill. 523.)'' If the owners of a majority of the shares may combine for the purpose of controlling the corporation, an individual or several minority stockholders may lawfully acquire shares for the purpose of controlling the corporation. Trustees given the power to buy and sell shares of stock or participation units, the subject of a trust, have the same freedom, except as stated in Restatement of the Law of Trusts, *supra*: ''The trustee violates his duty to the beneficiary, however, if he acts in bad faith, no matter how broad may be the provisions of the terms of the trust in conferring power upon him to deal with the trust property on his own account.'' Facts, and not con-

clusions, must be alleged, as in all cases of fraud, to sustain a charge of bad faith on the part of a trustee. *Ashton v. Macqueen*, 361 Ill. 132, 143; *Garrett v. Garrett*, 343 Ill. 577, 580. In his statement of the leading facts, plaintiff says he has "omitted certain allegations contained in the complaint, which the several defendants, in their respective motions, denominate variously as immaterial, irrelevant, composed of mere conclusions, and argumentative." The alleged violations of duty on the part of the trustees in acquiring participation units urged by plaintiff in his brief are, that the trustees, because of their position as trustees and the peculiar knowledge they obtained by reason of their position, have acquired a large number of participation certificates at low prices and gained control of the corporation; that for this purpose they have entered into a conspiracy with certain persons and companies unknown to the plaintiff, and will acquire additional certificates unless enjoined by the court. No allegation of fact is made showing when or in what manner the trustees have availed themselves of peculiar knowledge acquired as trustees, or how plaintiff or any owner of a participation unit has been damaged by disposal of participation units to any of the trustees. If fraud was practiced upon individual owners of units in the trust by any of the trustees, the wrong was personal to the owners of the respective units and could not be made the subject of a representative suit. *Langson v. Goldberg*, 373 Ill. 297. It is true, as contended by plaintiff, that the acquisition by the trustees of more than two thirds of the participation units would so entrench them that the remaining owners of units and beneficiaries under the trust could not remove the trustees, or prevent action of the trustees in extending the life of the trust or disposing of or holding the property of the corporation. However, if the trustees should so entrench themselves and should for selfish purposes attempt to extend the life of the trust, or deal with the

corporate property to their advantage, the plaintiff or any other owner of a participation unit would then have a right of action to prevent or redress the violations of duty contemplated or committed by the trustees. Such right of action would be based, not on the unlawful acquisition of participation units, but upon abuse of power created by the lawful acquisition of such units.

The decree dismissing the complaint is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.