Celia Russ, Norman Asher and Helen S. Asher, Appellants, v. Frank W. Blair, Lucius Teter and Frank M. McKey, Stock Trustees of Embassy Corporation, Appellees.

Gen. No. 43,731.

572

Opinion filed February 26, 1947.   Rehearing denied March 12, 1947. Released for publication March 20, 1947.

SHULMAN, SHULMAN and ABRAMS, of Chicago, for appellants; MEYER ABRAMS, of Chicago, of counsel.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellees; ISAAC E. FERGUSON, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a chancery action to nullify the extension of a stock trust and to compel the sale of the trust property or a termination of the trust.   Plaintiffs moved for a decree on the pleadings and stood by their motion after its denial.   On defendants' motion the trial court dismissed the amended complaint for want of equity and plaintiffs have appealed.

October 29, 1935, the Bondholders Protective Committee of the Embassy Hotel submitted to the bondholders a plan for reorganization of the Hotel Corporation.   With the plan was submitted a copy of a Securities and Exchange Commission's registration statement covering securities to be issued under the plan.   Under the plan a new company, the Embassy Corporation, was to be formed to purchase the hotel property.   The bondholders were to exchange their bonds for stock in the new company.   A stock trust was proposed, for approval of the bondholders, to be created by agreement.   The bondholders were in-

formed that a copy of the proposed agreement was on file with the depositary. Ballots were enclosed for a vote on the creation of the Trust. The plan was adopted and the creation of the Trust authorized.

The agreement was made August 15, 1935 "to secure continuity and stability of policy and management." Under its terms the bondholders could exchange their certificates of stock, received for the bonds in the Embassy Corporation, for stock trust certificates. By accepting the trust certificates the beneficiaries, among other things, became subject to the "terms, provisions and conditions" of the agreement. Article VII of the agreement is captioned "Termination." It provides that the agreement "shall, in any event," terminate August 14, 1945, subject to earlier termination by action of the trustees or direction of the beneficiaries representing a majority of the shares of capital stock. Referenda were required at the end of the first, fifth and seventh years of the Trust on the question of its continuation. Within thirty days after August 14, 1945, or after an earlier event as provided, the trustees were to deposit, with the Depositary, the Trust assets. Article VIII is designated "Miscellaneous." Section 7 provides the agreement "may be amended, altered or modified" by resolution of the trustees. Prerequisites for making changes effective were, not less than 10 nor more than 30 days notice to beneficiaries prior to the effect date of the proposed amendment and an affirmative vote of 51 per cent or more of the stock represented in the voting.

Defendants are successor stock trustees. At the time of suit there were 29,750 shares of stock outstanding. Of these 29,742 shares were represented by trust certificates. Plaintiffs within three years before suit acquired trust certificates for 762 shares. Under the agreement beneficiaries were entitled to withdraw from the trust their certificates of capital stock at any time. On the periodical referenda the vote cast ap-

pears to have been overwhelmingly in favor of continuing the Trust. The record is silent as to whether plaintiffs voted in a referendum. June 15, 1945 the beneficiaries were duly notified of a resolution of the trustees to extend the trust for 10 years. The notice called for the requisite affirmative vote. It appears that 16,410 voted for and 44 against the amendment.

It is the position of plaintiffs in their pleading and briefs that this extension is void.

At the trial there was no evidence since plaintiffs stood by their motion for a decree on the pleadings. We shall consider, therefore, only the admissions in the pleadings. Allegations of unfaithful acts or omissions on the part of defendants were denied.

In the re-organization plan the committee recommended that the stock be placed in a trust of 10 years duration unless earlier terminated. In the Securities and Exchange Commission's registration statement the substance of the Termination provision of the agreement was set forth. It was also stated, in the form of an answer to a question, that the maximum duration of the Trust would be "Ten years from August 15, 1935. . . ." The stock trust certificates provided that corresponding capital stock certificates "shall be due and deliverable" on August 14, 1945 or at such earlier date as the trustees shall determine or as otherwise provided in the Trust Agreement.

It is plaintiff's contention that in view of the foregoing representations, statements and provisions, power to extend the life of the Trust was not contemplated nor given in the agreement. In support of the contention they argue that placing the amending power under "Miscellaneous" instead of under "Termination" shows there was no intention that the power should include extending the term. They further argue that the representations, statements and provisions referred to and the fact that plaintiffs had

not acquiesced in the extension, remove this case from the application of *Morris v. The Broadview, Inc.,* 328 Ill. App. 267. Furthermore, they say in that case no point was made of the amending power being set up under a Miscellaneous article.

Plaintiffs by acquiring the trust certificates became subject to the provisions of the agreement. The agreement empowered the trustees to change its provisions. There was no qualification of the power expressed. The mere placing of the provision for the power under Miscellaneous does not remove Article VII of the Agreement from the scope of the power. Adding to this fact the representations and statements does not limit the power. We cannot say that in the 1935 Reorganization Plan it was necessary to advise the prospective beneficiaries of the amending power. It would seem consistent with prudence and fair dealing to have left out reference to the power at the time. Its use might not have been in prospect then.

We cannot say from a reading of the agreement that there is any implied limitation upon the power to amend. The provision for amendment in agreements of this kind is generally separated from the provision for termination. Since the power to amend included the termination clause, the phrase "in any event" in that clause was no obstacle. In *Bechtel v. Rorick* [65 Ohio App. 455], 30 N. E. (2d) 451. The amendment removed a sentence which included the phrase "in no event." The Ohio Court held the amendment valid. The main opinion upheld the amendment because there was no exception, in any provision, of any part of the agreement from the amending power; the termination clause referred to the agreement unamended; and plaintiffs there had a way out of the amended agreement. The Special Concurring opinion upheld the amendment because as to those who agreed to the extension it was a new agreement binding them, and as to the plaintiffs they

could demand the return of their bonds. It is our view that the words, "in any event" in the agreement before us, do not add any force to the words "shall terminate." We, therefore, believe that the ruling in *Morris v. Broadview* controls our decision here. *Friedberg v. Schultz,* 312 Ill. App. 171; *Helvering v. Stuart,* 317 U. S. 154, cited by plaintiff, have no application in the instant case.

It is true that in *Morris v. Broadview, Inc.,* the court found that the plaintiff had acquiesced in the exercise of the amending power. This was a practical construction which confirmed the principle applicable, i.e. persons free to contract may grant trustees the power to extend the trust in any manner and under any conditions.

■ Plaintiffs filed in this court a substitute motion to amend their complaint and brief. Defendants stated in oral argument that they did not oppose the motion. Plaintiffs point out in this new matter that the Embassy Corporation is a Delaware Corporation and that section 18 of the Delaware Corporation Act requires (*Appon v. Belle Isle Corp.,* 46 Atl. (2d) 749) that an agreement to extend a voting trust be executed within one year prior to the term. They argue that in view of that statute under which "general power to amend . . . is governed," the implication is clear that the intention was to grant a limited amending power under the article "Miscellaneous." Without conceding the applicability of the Delaware statute or case, we conclude there is no merit in this argument. There is no objection to incorporating in an instrument a power which is given by statute so long as there is compliance with the statute. We cannot infer that because a statute gave the general power, Section 7 of the Miscellaneous clause gave but a limited power. The manner of expressing and locating the provision of the grant is discretionary with the framers. There is no question before us of unfair dealing with the beneficiaries in this respect.

██ ██ There is no complaint that the prerequisites for amending were not fulfilled. Plaintiffs complain, however, that the defendants were advocates of the amendment in their own favor. There is no doubt that powers granted trustees may not be used to further interests of the trustees to the detriment of the beneficiaries. *Brown v. McLanahan,* 148 Fed. (2d) 703. We think the term ''in their own favor'' used by plaintiffs, begs a question and is not warranted under the admissions in the pleadings. The trustees did advocate the approval of the amendment. They were, therefore, required to make full disclosure. *Shapiro v. Chicago Title & Trust Co.,* 328 Ill. App. 650. We cannot say from the pleadings that there was not a full disclosure of facts bearing on the referendum.

For the reasons given the decree is affirmed.

*Decree affirmed.*

Lewe, P. J., and Burke, J., concur.